# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

## CIVIL RIGHTS COMPLAINT FORM FOR
## PRO SE (NON-PRISONER) LITIGANTS IN ACTIONS UNDER
## 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

Bruce Ling ,

_____ ,

_____ ,

*(Write the full name of each Plaintiff filing this complaint. If there is insufficient space to list the names of all Plaintiffs, please write "see attached" in the space above and attach an additional page with a full list of names.)*

Case No.: 4:17cv263-MW/CAS
*(To be filled in by the Clerk's Office)*

**v.**

"See attached" ,

_____ ,

*(Write the full name of each Defendant who is being sued in this complaint. If there is insufficient space to list the names of all Defendants, please write "see attached" in the space above and attach an additional page with a full list of names.)*

_____ /

**Jury Trial Requested?**
☒ **YES**   ☐ **NO**

Filed06/09/17USDCFLn3PM0107

Secretary Julie Jones
Warden Torrey Johnston
Nurse Amy Kirkland
Physician L. Salvador (Lucilita Abad Salvador)
C H O H. Hercule (Hantz C. Hercule)
Sr. Health Services Administrator Dianne O. Smith
Nurse _____ Register
Mental Health _____ Friedele
Mental Health _____ Sandin
Governor Rick Scott
Florida Department OF Health
Bond Community Health Center
Temple O. Robinson M.D.,
Kendail M. Campbell, M.D; FSU Board OF Trustees
Damon McMillan M.D.
Gabriel Otuonye, MHA
Neighborhood Medical Center Inc Richardson-Lewis
Esias Lee, M.D.
Jeanne S. Freeman CEO;
et al;

## I. PARTIES TO THIS COMPLAINT

A. Plaintiff(s)

1. Plaintiff's Name: *Bruce Ling*

   Address: *2236 David and Sibbie Ln.*

   City, State, and Zip Code: *Tall, FL. 32317*

   Telephone: _____ (Home) *850-597-3078* (Cell)

2. Plaintiff's Name: _____

   Address: _____

   City, State, and Zip Code: _____

   Telephone: _____ (Home) _____ (Cell)

   *(Provide this information for any additional Plaintiffs in this case by attaching additional pages, as needed.)*

B. Defendant(s)

State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for *every* Defendant:

1. Defendant's Name: See cover page of 1-9 named defendants

   Official Position: See cover page of official Positions

   Employed at: (FDOC) Florida Department OF Corrections

   Mailing Address: 501 S. Calhoun St. Tall FL 32399

   _____

   ☒ Sued in Individual Capacity          ☒ Sued in Official Capacity

2. Defendant's Name: Governor Rick Scott

   Official Position: Governor

   Employed at: State OF Florida

   Mailing Address: The Capitol Tall, FL 32399-0001

   "See attachment"

   ☒ Sued in Individual Capacity          ☒ Sued in Official Capacity

   *(Provide this information for all additional Defendants in this case by*

   *attaching additional pages, as needed.)*

## II.   BASIS FOR JURISDICTION

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), you may sue federal officials for the violation of certain Constitutional rights. "The court has Supplemental jurisdiction over plaintiffs state law claims under 28 U.S.C. Section 1367."

NDFL Pro Se 15 (Rev. 12/16) Civil Rights Complaint Non-Prisoner
ClerkAdmin/Official/Forms

11

3. Defendant's Name: Florida Department OF Health

Official Position:

Employed at: State OF Florida

Mailing address: 4052 Bald Cypress Way #C22.
Tall FL. 32399

4. Defendants Name: See cover page of 12-16 named defendants

Official Position: See cover page of official Positions

Employed at: Bond Community Health Center/FSU Board OF Trustees

Mailing address: 1720 S. Gadsden St. Tall, FL 32301;


5. Defendants Name: See cover page of 17-19 named defendants

Official Position: See cover page of official positions

Employed at: Neighborhood Medical Center Inc Richardson-Lewis

Mailing address:

5

The Norther District OF Florida is an appropriate Venue under 28 USC section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## III    Plaintiffs

Plaintiff, Bruce A. Ling J. R, was and was at all times mentioned herein a prisoner of the State of Florida in the custody of the Florida Department of Corrections. He was confined in Liberty C.I. in Bristol FL, and was released 10-19-13

## IV    Defendants

Defendant Torrey Johnston is the Warden of Liberty C.I. He is legally responsible for the over all operation of the Department and each institution under its jurisdiction, including Liberty C.I.

Defendant Torrey Johnston is legally responsible for the operation of Liberty C.I. and for the welfare of all the inmates of that prison.

Defendant(s) Secretary Julie Jones; Nurse Amy Kirkland; Physician L. Salvador; CHO H. Hercule; Sr. Health Services Administrator Dianne O. Smith; Nurse _____ Register; Mental Health _____ Friedele; Mental Health _____ Sandin; Governor Rick Scott; Florida Department OF Health

Bond Community Health Center, Temple O. Robinson M.D; Kendall M. Campbell M.D; FSU Board OF Trustees; Damon Mc Millan M.D; Gabriel Otuonye MHA; Neighborhood Medical Center Inc Richardson-Lewis Esias Lee, M.D; Jeanne S. Freeman CEO, et al, are employees of the Florida Department OF Corrections, the State OF Florida, Bond Community Health Center, FSU Board OF Trustees, Neighborhood Medical Center, who at all times mentioned in this complaint held their mentioned positions and was assigned to Liberty C.I., Quincy Annex, RMC, Wakulla C.I/Work Camp or the State OF Florida Bond Community Health Center, FSU Board OF Trustees, Neighborhood Medical Center,

Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint each defendant acted under the color of State law

Are you bringing suit against (*check all that apply*):

☐ Federal Officials (*Bivens case*)        ☒ State/Local Officials *(§ 1983 case)*

## III.   STATEMENT OF FACTS

Provide a short and plain statement of the *facts* which show why you are entitled to relief. Describe how *each* Defendant was involved and what each person did, or did not do, in support of your claim. Identify when and where the events took place, and state how each Defendant caused you harm or violated federal law. Write each statement in short numbered paragraphs, limited as far as practicable to a single event or incident. *Do not make legal argument, quote cases, cite to statutes, or reference a memorandum.* You may make copies of the following page if necessary to supply all of the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. *Facts not related to this same incident or issue must be addressed in a separate civil rights complaint.*

        See attachments

## Facts

1. While at Wakulla C.I., in the year of 2008 plaintiff had noticed that his frequent urination was abnormal, and possibly before then. At general or protocol visits to see the nurse/doctor, plaintiff would notify the staff of any abnormal changes in his health.

2. In the year of 2009, plaintiff had a toe infection from a blister caused by jogging in prison issued footwear. Nurse Amy Kirkland treated the infection and performed a subsequent "mini surgery".

3. Upon being treated with Sephra, antibiotics and Rocephen shots, plaintiff later noticed that he would wake up in the infirmary several times in the night, and during the day to urinate, a significant amount of times than before.

4. Plaintiff also noticed a change in his stool, as the nurses told him that he should expect. But he hadn't expected the problems to last for several years. (Note worthy is that plaintiff had experieced a sleepless night while in the infirmary that caused him to feel as if he was loosing his mind).

5. When being concerned about his urological problems and other odd muscle, joint, knee popping symptoms, the plaintiff had attempted to urge other medical staff and Nurse Amy Kirkland to do more indept testing to see why plaintiff

9

Was experiencing Urological problems, in addition to muscle joint, Knee, and gastrointestinal constipation type symptoms. (Medical records indicate that the latter problems may have been initially caused by the medication and shots for plaintiff toe infection). And plaintiff questions effect of Tetanus shot

6. Plaintiff recalls requesting for a prostate and testicle examination but was denied being told that he was to young, being under (40) years old. In addition plaintiff had requested that Nurse Amy Kirkland provide him with some type of medication that would stop him from urinating so frequently, especially at night because he would be so tired from loosing sleep.

7. Nurse Amy Kirkland responded to plaintiff by stating "You are just being lazy by not wanting to get up in the middle of the night to use the restroom; I'm not going to give you medication. And the trace of protein in your urine is nothing to be alarmed about, because the urine samples/test we took is showing that everything is just fine." (Also worth noting is that Nurse Amy Kirkland told plaintiff that he experienced the bone joint popping problems because of aging).

8. It is plaintiff belief that he had grieved the above, and submitted request forms for the above issues, being that it had physically and psychologically affected him. And because it was an ongoing medical issue without any diagnosis treatment or care (plaintiff notes that

he recalls speaking and writing to medical about his concerns of an overactive bladder, as well).

9. Plaintiff was subsequently transferred to Liberty C.I. from Wakulla Work Camp without receiving adequate medical care and treatment for his urological, muscle bone, joint, gastrointestinal and constipation type symptoms. The latter symptoms caused directly by the change in diet to a meat/soy product high in toxins, and or had exacerbated the injury/condition, while at Wakulla Work Camp.

10. Nurse Amy Kirkland had neglected to do follow ups to the urological problems and other symptoms that the plaintiff was suffering from, and fail to render a diagnosis, adequate medical care and treatments, when not using professional judgment, which are requirements of her duty as a health care practitioner Exh A1-6

11. Upon plaintiff being persistent about his medical condition, In the year of 2013, it was discoverd by Urologist Miguel, at (RMC) Main Unit that claimant had been suffering from Benign Prostatic Hypertension also known as (BPH)

12. Upon being provided with a diagnoses for his (BPH) condition in 2013 plaintiff had attempted to exhaust his administrative remedies when filing grievances from Liberty C.I. to Nurse Amy Kirkland, But he began to experience problems with receiving timely responses, and or delay tactics responses that were an encroachment upon his due process rights. See attached grievance Exh. A1-6

## Physician L. Salvador

13. In the month of July or August of 2011 plaintiff was transferred from Liberty C.I. to Quincy Annex. While there plaintiff notified the medical staff of his undiagnosed urological problems, including Constipation and other symptoms.

14. Subsequently plaintiff was seen by a male doctor CHO H. Hercule. Plaintiff explained his problems to the doctor, and the doctor attempted to figure out what the plaintiffs problems were based on his medical Knowledge and experience, without the use of modern medical technology.

15. Plaintiff was also seen by Physician L. Salvador. He explained to her about the health problems he was experiencing. And about the discussion he had with the male doctor about his urological and other health problems (symptoms).

16. During the above time, it was discovered that plaintiffs blood pressure was high, and that it had been high while he was at WaKulla WorK camp as well. The medical staff at Quincy Annex had subsequently ordered the plaintiff to have his blood pressure checked for a specified time.

12

17. Within the specified period of claimants blood pressure checks, a female nurse had passed around a sheet of paper in the dorm for inmates to sign if they had wanted to receive a "Flu shot".

18. Upon plaintiff assessing all of the current health issues he was experiencing at that present time, he then dicided that it may be a good thing to take a "Flushot" as a precautionary method and to prevent any further health problems or sickness, but not Knowing that it would drastically change his life forever. ExhB1-3

        S.L.P.N. D. Stoltzfus

19. On or about 11-8-11, while plaintiff was with SLPN, D. Stoltzfus, and conversing with her about the lenght of the Influenza vaccine needle, when she had inquired of his fears. The nurse immediately injected the plaimtiff with the needle in the arm.

20. In consequence the plaintiff subsequently signed a Informed Consent Form For vaccine, without thoroughly reading it, and without being provided with a (V I S) Vaccination Information statement, not Knowing the extent of the risk of the desease, and the benefits and risk of the vaccine at the time. (No inmates at Quincy Annex were provided with a copy of the (VIS) form as required. Exh C1-2

21. On or about 11-11-12, upon leaving the library and entering the dorm, plaintiff became feverish, lighthead, and had difficulty breathing, with his heart fluttering and the left side of his jaw clenching.

22. Subsequently the plaintiff had informed his bunk mate Chris Williams Dc#_____ of the health problems he was experiencing, and then laid down on his top bunk to rest and control his breathing, in hopes that the symptoms would go away.

23. Later on in the evening, the plaintiff had informed inmate "G" Dc#_____, Ivory Dc#_____ and inmate Leo Zarba Dc#_____ of his health problems, just in case of anything tragic was to happen to him. The plaintiff had also notified the dorm Sgt and Ofr. Davis about his health problems and concerns.

24. Being that the plaintiff was still suffering from the same symptoms days later, he then submitted a request form to see the nurse, dated 11-13-11, and explaining the above situation. Additionally he had written a letter to his childrens mother explaining his situation and concerns.

25. Subsequently the plaintiff was transferred from Quincy Annex to Liberty C.I. for care and to be seen by nurses and clinician See attachment Exh. I·6

26. While at Liberty C.I., the plaintiffs health was deteriorating rapidly and he began experiencing major other symptoms along with the current symptoms, including neurological mobility of the arms when his head tilted, and dizzyness while standing. The plaintiff submitted a "sick call", notifying the medical staff of his concerns that he may have been suffering from the side effects of the "Flus hot".

27. Upon further visits to the medical department for adequate treatment and care, with plaintiff taking basic test for protocol purposes, the medical staff claimed to not have found anything medically wrong with plaintiff, aside from high blood pressure and fever, in which is serious.

28. At this point in time the plaintiff was suffering from a severe case of chronic fatique and a myriad of symptoms, including severe headaches, muscle, joint pains and dizzyness, tingling and numbness in extremities.

## Mental Health Mr. Friedele / Mrs. Sandin

29. The medical staff had attempted to desuade the plaintiff by telling him that the "Flushot" could not be the source of his health problems, and had referred him to Mental Health. (Noting that the medical staff told the plaintiff that his problems may be all conjured up in his mind; such callous comments).

30. Mental Health staff referred the plaintiff back to the Medical Department, stating that his issues were medical in nature and nothing to do with Mental Health.

31. The relationship between the plaintiff, Medical staff and Mental Health staff had become strained because the staff could not find out what health problems the plaintiff was actually suffering from, and they began to avoid the plaintiff, neglecting their duties to treat and care, and not referring him to the proper medical specialist for more testing in which were needed for a diagnosis. Exh D1-2

15

32 Plaintiff was compelled to file numerous grievances for adequate medical treatment and care, for a proper diagnosis.

33 It should be noted that due to the medical staff misleading the claimant, and stating that the "Flushot" could not have been the cause of his heath problems, plaintiff then began a compelled research and had discovered, Chronic Fatigue Syndrome, Chronic Eptein Virus Syndrome, Guillain Barre Syndrome and alike syndroms that had similar and same symptoms that he suffered from.

34 Also it should be noted that Liberty C.I.'s medical staff had refused to inform the Secretary of Health and Human Services of the claimants injuries, from vaccine presumably out of fear of liability

35 Due to the plaintiffs continuous suffering of brain and neurological problems, spasms, respiratory symptoms, irregular blood flow, numbness in extremities, muscle and joint pains, chronic fatigue, and worsend urological and gastrointestinal problems, he had made many request to see a neurologist and urologist specialist, in addition to have a MRI and or CAT scan taken to make an accurate diagnosis for plaintiffs medically unexplainable symptoms to no avail. (Even fast/slow or prolonged chewing caused fatigue to jaws neck and brain).

16

36. A request for a medical furlough and or medical conditional release was made to the Warden, CHO, and Secretary of (FDOC) Florida Department OF Corrections, by plaintiff in order for him to visit a hospital, clinic, neurologist and urologist specialist for the many symptoms he was suffering from which caused a decline in his health. Plaintiffs requst were denied as well.

### Governor Rick Scott

37. In Plaintiffs desperate attempt to save his life and to restore his health, he had made request to outside agencies/organizations for help. Including filing a "Emergency Petition For Medical Furlough And OR Conditional Medical Release" to the Governors Office. ExhEI·5

### Sr. Health Services Administrator Dianne O. Smith

38. As a result the Plaintiff subsequently received a 10-29-12 response from Liberty C.I.'s Dianne O. Smith, stating in part that, "Liberty C.I. is following proper protocol as far as providing you treatment, and that consults have been submitted for you to see the Urologist and neurologist. Your Urologist appointment has already been approved."

39. Consequently the Plaintiffs "insufficient" neurology consult that he was compelled to sign in order to receive care and treatment was denied.

17

40 Plaintiff had made many more attempts to see a neurologist specialist concerning his vaccine injury to no avail due to Physician L. Salvador, and medical staff, deterent defensive medicine tactics. Exh F

41 Upon being seen twice by the Urologist at (RMC) West Unit in Lake Butler FL, Plaintiff Ling filed a second complaint on 1-23-13 to the Florida Department OF Health because of delays and inadequate medical treatment and care for his over all health problems.

42 At a subsequent visit to see the urologist, it was discoverd through a medical procedure that the plaintiff had an "slightly enlarged prostate", and he was given a second diagnosis of (BPH) Benign Prostatic Hypertension. Plaintiff had been taking the medication Flomax, and it had only relieved pressure, but he still suffers from all other symptoms of (BPH). (Noting that the first diagnosis given was prostatitis).

43 While at (RMC) plaintiff had made attempts to see a neurologist, immunologist and other required specialist for the health problems he still suffered from. On a few occassions plaintiff was kicked out of the medical department with out treatment or care, and was still charged a sick call medical co pay fee. See grievances and attempts to exhaust administrative relief.

44 Plaintiff Ling had also been seen by a Mental Health staff member by the name of perehaps Mr. Jefferies at (RMC) West Unit concerning his health problems with

45 Medical staff at Liberty C.I, and (RMC) of not wanting to help him when not providing him with adequate medical/ mental treatment and care, but instead avoid his please and request for help.

46 Upon Plaintiffs return to Liberty C.I. the medical staff deliberately delayed his visits for sick calls he submitted. And one female nurse had even kicked him out of the medical department without providing him with any help or services, and was again charged a medical copay lien against his account. See grievance log # 1307-120-096, 1308-120-008

47 Plaintiff Ling had attempted to speak with Asst. Warden Duval, about his situation but was advised to write a request to Dianne O. Smith.

## Nurse ——— Register

48 Eventually plaintiff was seen by Nurse Register again at his 8-31-13 sickcall. She attempted to avoid dealing with plaintiffs health issues concerning his vaccine injury and constipation type symptoms. Exh G1-9

49 Nurse Register became visibly upset when plaintiff inquired about adequate care and treatments for his above mentiond health problems. She advised plaintiff on the need to speak with other officials in higher up job positions, in whom plaintiff assumed she was speaking of the Warden or Secretary OF DOC

10

50 Initially, Nurse Register told Plaintiff that there was nothing she or the Doctors could do concerning his vaccine injury, and nor could they provide him with a special diet or other treatments for his constipation and or gastrointestinal problems. She then put in a request for plaintiff to see Mental Health Mr. Friedele, supposedly for the psychological problems plaintiff was experiencing due to ill and inadequate treatment and care.

51 Plaintiff subsequently filed a grievance concerning his 8-31-13 sick call visit with nurse Register. See grievance and request to food service. (Plaintiff notes that he had previously filed grievances against Nurse Register concerning her malicious and retalitory actions towards him from when he initially complained of his sickness and suffering of the "Flushot", and the medical staff for same reasons

52 Also worth nothing is that a Warden was present and sat in sickcall with Nurse Register and Plaintiff.

53 Upon Plaintiffs visit with Mental Health Mr. Friedele, he noticed that Mr. Friedele did not want to deal with his mental health issues, concerning the problems he was experiencing with his health and the medical staff. (Mr. Friedele even attempted to disuade plaintiff from discussing his health problems?)

54 Plaintiff insisted that he wanted to talk and that he needed help because the medical staffs ill actions had altered his way of thinking into more negative thoughts. Mr. Friedele suggested that he could sign plaintiff up for

anger management and a stress class because plaintiff appeared to be stressed out. Plaintiff declined the offer and stated that his psychological issues have become greater than that.

55  The visit was then concluded with Mr. Friedle, and with him next stating as had before that it appears that plaintiff essential problems are medical and that he would refer plaintiff back to the medical department as he and Mrs. Sandin had done before. (Mr. Friedele also stated as (RMC's) Mental Health Mr. Jefferies had, that DOC will not treat inmates with vaccine injuries or with such symptoms).

56  On 9-23-13, Plaintiff had a call-out visit to see the Food Service Director Mr. Collete, concerning his request for a vegan diet because of the Medical departments refusal to provide him with a special diet for his health problems and that in which plaintiffs body would agree with. Subsequently plaintiff declined to sign the vegan diet contract that put him at risk for disciplinary action. See vegan diet request form.

57  Plaintiff also had explained that he would be released from prison in about 3 1/2 weeks, and that he did not want to subject himself to disciplinary risk of confinement now, over health problems that he had been experiencing from the meat/soy product, medication and shots/vaccines for several years. (Mr. Collete did confirm to plaintiff that the meat/soy product Known as (TVP) Textured Vegatable Protein was giving some inmates gastrointestinal problems). Exh H1-8

58 On 10-5-13 Plaintiff had another visit with Nurse Register from a sick call he had submitted, dated 9-13-13. Nurse Register began the conversation speaking only about plaintiff constipation and gastrointestinal problems that began in the year of 2009, and she inquired about his BPH condition.

59 Plaintiff Ling had then inquired to Nurse Register if the medication Sephra and Rocephen had caused his severe constipation and gastrointestinal problems. She had stated "No".

60 Plaintiff next inquired about if Sephra and Rocephen had caused his joint and muscle problems. Nurse Register again stated "No", the medication is only antibiotics". (Noting that plaintiff also mentioned to Nurse Register that he urinated more frequently upon being given those shots and medication).

61 Plaintiff began to state that he was just trying to pin point the cause of his health problems. And that upon the administration of a "Flushot" in the year 2011, his joint, spine, muscle and breathing problems had not went away, limiting exercise and preventing working. Nurse Register totally avoided responding to the mentioning of his vaccine injury, but instead diverted back to plaintiff constipation and gastrointestinal problems. (Noting that no medical staff had ever attempted to inspect plaintiffs colon or to take feces/bowel samples).

62. Subsequently Nurse Register asked plaintiff if he had wanted to try a laxative, but that she did not normally recommend it because it can alter bowel movements, if used often. Plaintiff agreed to take the laxative, and was given (4) stool pills. The laxative eased plaintiffs bowels in an unnatural way. But his next bowel movement was strained as previously complained of, for years.

63. Plaintiff notes that he had requested to see the new doctor CHO Rummel about his health problems but was denied on several occasions.

64. Plaintiff Ling filed a grievance in an attempt to exhaust his last 10-5-13 sick call visit issues on 10-9-13. He received a prescription of Fiber-Lax. Upon taking Fiber Lax, there was no change in his constipation.

65. All above aforementioned defendants owed plaintiff Ling a duty of care and were all aware of plaintiffs needs of treatment for his serious degenerating disabling deadly medical, mental conditions requiring immediate medical attention but was blatanly disreguarded by defendants, abandoning plaintiff Bruce Ling for dead to fend for his own life in excrucrating pain and agony without treatment unnecessarily by defendants. Plaintiff Ling would have died Had it not been for the saving Grace of God and Jesus, but now suffers more internal and mental injuries due to delay of treatment and care from negligence.

66. In addition Plaintiffs serious urological issues strains stresses and exasperate his other medical condition and brain, body pains while awake or asleep when having to urinate in the midst of suffering from breathing, sleeping disorder, all caused by prolonged/delayed treatment and care, also causing sexual dysfuntion permanent urological damage, possible sterility, depression humiliation and embarassment.

67. Due to the deterent tacticts and practices of defensive medicine of (FDOC) medical and mental health staff to provide plaintiff with adequate medical/mental treatment and care from qualified specialist has caused due process violations and frustrated timely compensations, and **hindered social security** disability benefits, without proper diagnosis.

68. As part of its supervisory and protective responsibility for the care, custody and control of inmates, the Florida Department OF Corrections is required to have any medical, mental or psychological problems of an inmate diagnosed and treated when ever possible.

69. Plaintiff Ling has satisfied all elements of all claims.

70. Claims are hereby filed timely due to extraordinary circumstances and the continuing violations of the plaintiffs rights by all defendants. Upon Plaintiffs EOS from FDOC, he subsequently enrolled at Bond Community Health Center for the purpose of medical care treatment and diagnosis.

24

# Facts

## Bond Community Health Center

### I. Dr. Temple Odessa Robinson

1. Between the years of 2013-2015, patient Bruce Ling was in the care of Dr. Robinson in search of a diagnosis treatment and care for serious symptoms patient/plaintiff Ling experienced for several years while in prison and several years there afterwards along with a BPH condition.

2. Dr. Robinson had never taken plaintiff's health complaints serious, therefore not attempting to find a proper adequate diagnosis for plaintiff when she did not voluntarily and professionally refer plaintiff to all of the proper medical specialist who could do so, exhibiting deliberate indifference. (It is questionable why Dr. Robinson couldn't make the proper diagnosis herself).

3. Patient/plaintiff Ling had never received a diagnosis, treatment or care for the myriad of serious symptoms that he complained of specifically to Dr. Robinson, exhibiting breach of due and reasonable care. Consequently preventing plaintiff from further compensation in other cases.

4. Complaints had been submitted to Bond Community Health Center, the Florida Department OF Health and Governors' Office by plaintiff Ling to no avail.

25

5. There is nothing in the medical records of patient Ling that could exclude that he doesn't suffer from a myriad of serious symptoms, in which he still does.

6. Subsequenty plaintiff Ling was "abandoned" by Dr. Robinson to be cared for by Dr. Campbell due to her becoming CEO of Bond Community Health Center.

7. And she also in an concerted act with the named defendants "abandoned" plaintiff at Bond Community Health Center. See all signatures of letters to the plaintiff from the named defendants. **Exh. J1**

8. Defendants breached contract of enrollment when banning plaintiff from clinic. The acts of the defendants caused plaintiff to loose all dignity suffering excruciating pain and mental anguish.

   Dr. Kendall Marvin Campbell; FSU Board OF Trustees

9. Upon Dr. Robinson abandoning plaintiff Ling to the care of Dr. Campbell in 2015, Dr. Campbell never took plaintiffs health complaints serious as well, and was not interested in finding a proper adequate diagnosis for plaintiff when not voluntarily and professionally referring plaintiff to all of the proper medical specialist who could do so,

exhibiting deliberate indifference. (It is questionable why Dr. Campbell couldn't make the proper diagnosis himself).

10. Additionally, Dr. Campbell has not pursued any medical care or treatment for plaintiffs medical complaints and serious condition, aside from plaintiff beeing seen by a chiropractitioner, exhibiting breach of due and reasonable care

11. Dr. Campbell and Dr. Robinson has refused to allow plaintiff Ling to receive prescription refills for his serious BPH urological symptoms in which he suffers from daily along with the myriad of other symptoms, exhibiting deliberate indifference.

12. Plaintiff was only told that he had to wait for his next scheduled appointment which was several months later on March 10, 2015. See notes from pharmacy of latter 2015 and early 2016.

13. Prior to the March 10, 2016 appointment plaintiff had written a complaint to Bond, and the Florida Department of Health.

14. While at the March 10, 2016 appointment with Dr. Campbell, plaintiff explained to the doctor that he was there to talk about him being referred to see other specialist for his serious myriad of

27

symptoms that he had previously complained of for over two years.

15. But Dr. Campbell had only wanted to hear about plaintiffs BPH condition and said that he would need to do an anal prostate exam in order for plaintiff to receive medication again.

16. Plaintiff questioned Dr. Campbell about the neccesity to perform a anal exam because an instrument was used to perform a prostate exam inside of plaintiff in 2013, while still in prison.

17. Plaintiff further explained that a female nurse and the Urologist said that his prostate was slightly enlarged for unknown reason.

18. But Dr. Campbell insisted that he had needed to perform an anal exam in order for plaintiff to receive further treatment?

19. Consequently and under extrem duress, patient Ling agreed to the anal exam only because Dr. Campbell said it was necessary (Noteworthy is that at the 3-10-16 appointment was the only time any Doctor or nurse had mentioned the necessity of a anal exam).

20. Before the exam was performed patient Ling had told Dr. Campbell that he had to use the restroom. After using the restroom Ling had again called witness1. _____ . abut his suspicions of Dr. Campbell pressing for

21. When performing the anal exam Dr. Campbell exerted excessive force, in which was believed to be out of malice from plaintiff filing complaints against him and Dr. Robinson. See complaint concering sexual assault. Caused excruciating pain.

22. Subsequenty plaintiff Ling received a letter from Bond Community Health Center's Damon Millan, MD Medical Director and Temple O. Robinson, MD Cheif Executive Officer banning plaintiff from the clinic upon him reporting the sexual assault. See letters, and "elements of conspiracy of rights."(Denial of necessary adequate medical care and treatment)

23. Dr. Campbells actions caused plaintiff to loose all dignity with mental pain anguish and psychological damage. Exh. J-2

24. Upon plaintiffs response to the doctor's letter sent 4-19-16, a follow-up letter of comprehensive investigation to doctors initial letter was received from plaintiff on or near 6-16-16 and dated 6-8-16. See attached Letter. Exh J-3,4

25. Plaintiff Ling subsequenty called and left messages for Temple Robinson MD; Damon McMillan MD; and Gabriel Otuonye, MHA, LHRM, CMCO, in which is believed to have conducted "botched" investigations. All calls were made in same day and there were no returned calls to plaintiff. The defendants all acted in a concerted act to abandon plaintiff Ling and to covertly conceal sexual assault allegations.

29

26. Perplexed and shocked, plaintiff Ling was called by a Bond Community Center employee for a reminder for him to come to his next scheduled appointment with Dr. Campbell?

27. Upon explaining to the nurse of the mistakend confusion of the appointment with Dr. Campbell. She then advised that plaintiff could be seen by a female doctor, and rescheduled plaintiff appointment with a female doctor at Bonds specialty clinic in a different location.

28. When the plaintiff arrived to his appointment and having to pay a fee, he was eventually told that he would not be able to be provided with services, upon his legnthy wait, although being refunded when departing the facility, plaintiff was humiliated and loss all dignity. See F.S.381.026 Also.See Exh. J5

29. Plaintiff Ling is now enrolled at Neighborhood Medical Center and has to go through the same hardships of not being properly diagnosed, treated or cared for, and to be seen by qualified medical specialist in whom could do so, when they couldn't. Further delaying progress in compensation of other cases, with proper treatment and care in addition to hindering Social Security disability benefits.

30

# Facts

## Neighborhood Medical Center Inc Richardson-Lewis

1. Upon patient Bruce Ling being abandoned as a patient at Bond Community Health Center, he subsequently enrolled at Neighborhood Medical Center on or about November 2016 as a patient with hopes of receiving adequate medical treatment and care as promised by enrollment employees.

## Dr. Esaias Lee

2. Plaintiff Ling was referred to be treated and cared for by Dr. Lee by a female employee. Plaintiff Ling had explained to Dr. Lee of all of his known medical and mental conditions, that occurred while he was imprisoned, namely of his prostate/urological condition and myriad of symptoms he experienced while at different prison camps.

3. After several months of visiting with Dr. Lee concerning adequate medical/mental treatment and care for plaintiffs complained of medical and mental condition, plaintiff Ling noticed that Dr. Lee had been avoiding conversation about how plaintiffs medical condition came about, namely the influenza vaccine injury, soy poisoning of a food product feed to plaintiff while in prison, and the possibility of medication shots or other vaccines given to plaintiff while imprisoned.

31

4. Plaintiff notes that it is Dr. Lee's belief that he suffers from his physical and mental conditions due to a chemical imbalance of the brain from being incarcerated for a long extended period of years in prison, in which is unconted by plaintiff, but not the sole cause of plaintiffs medical and mental conditions.

5. Dr. Lee explained to plaintiff Ling that he would make referrals in order for him to see a urologist and Mental Health specialist. And also stating that it would be difficult because of the facilities lack of funds and plaintiff not having insurance. (There was no mention for referrals to see G.I., or other specialist).

6. Plaintiff Ling subsequently submitted a complaint form dated 1-25-17, when he noticed that Dr. Lee was giving him the run around and not providing plaintiff treatment and care for his serious medical condition, or over all mental condition. See Exh. K1

   CEO Jeanne S. Freeman

32

7. Upon speaking with the CEO Freeman about the inadequate medical/mental treatment and care of the facility, she ensured plaintiff Ling that she and Dr. Lee would do all that they were able to do in order to make sure that he would receive adequate medical/mental care and treatment.

8. At 3-21-17 appointment with Dr. Lee plaintiff had again become agitated with Dr. Lee's perverted demonstrations of the conditions of an enlarged prostate and at times allowing his leg or knee to inappropriately touch the plaintiffs leg and knee for the second time. (This was also the second time plaintiff had to wait nearly 3- to 4 hours to be seen by Dr. Lee).

9. At this particular visit Dr. Lee was showing the plaintiff labs of his PSA and cholesterol levels, stating that plaintiff could not have an enlarged prostate because of low PSA level but that plaintiff did have a high cholesterol level.

10. When plaintiff asked Dr. Lee what was he going to do about his suffering of daily myriad of serious symptoms, namely from his influenza vaccine

33

11. injury, Dr. Lee then began to say that if he was to diagnose plaintiffs health condition when no other previous doctors hadn't done so, it wouldn't look good in front of the "Board" and after all he is just a "Family Doctor" and not a specialist.

12. Plaintiff Ling then explained to Dr. Lee that if health care practitioners are allowed to administer vaccine shots then they should be able to diagnose vaccine injuries.

13. Another complaint was submitted to the CEO by plaintiff Ling explaining his visits with Dr. Lee and his inappropriate actions and touching See attachment. Exh K2:1,2

14. Dr. Lee had no real intentions nor interest in properly diagnosing, treating or caring for plaintiffs Ling serious debilitating medical and mental conditions.

15. Due to Dr. Lee's deliberate indifference to plaintiff Lings serious medical and mental condition, it caused him to suffer physically and mentally in agony and pain, when

34

16. Dr. Lee denied plaintiff the necessary and adequate medical and mental treatment and care that his health conditions caused for. (Constituting cruel and unusual punishment) Dr. Lee owed plaintiff Ling a duty of care.

17. Plaintiff Ling has since spoken with the CEO Freeman concerning diagnosis treatments and care for his medical condition, and she only says that "I can't make Dr. Lee give you a diagnosis, and I'am waiting for you to locate and give me the names of medical specialist in whom we can refer you to, being that it isn't a required duty of ours to find you a medical specialist for your medical condition."

18 Dr. Lee and CEO Freeman conspired against plaintiff Ling rights when they both Knowingly denied plaintiff the right to adequate medical care and treatment and intentionally inflicting more emotional distress, breaching their duties of care and ultimately abandoning plaintiff.

19. As of May 2017, plaintiff hasn't been seen by any specialist. Plaintiff Ling visited the CEO Freeman in the month of May to show her the evidence of his Knee issues. See Exh. H7

20. Also, see Exh. I-5 in support of facts.

35

## IV    Exhaustion OF Legal Remedies

Plaintiff Bruce A. Ling used the prisoner grievance procedure available at Wakulla C.I. Work Camp, Quincy Annex, RMC, Liberty C.I. to try and remedy the problems in addition to filing grievances/complaint at Bond community Health Center and Neighborhood Medical Center See attachments

On [7-20-13] plaintiff Bruce Ling presented the facts relating to this complaint, On [8-5-13]. Plaintiff Bruce Ling was sent a response saying the grievance had been denied. On [      ], He appealed the denial of the grievances. See attachments. Exh I, and Exh I-5 for the confusion of return of appeal. Also see other attached grievances.

## V    Legal Claims

Plaintiff(s) reallege and incorporate by reference paragraphs 1-    (all paragraphs in the first four sections)

All named Defendants "deliberate indifference to medical needs", "inadequate medical treatment" denial of necessary and adequate medical care and treatment", Medical Malpractice/Negligence; Patient Abandonment; Intentional Infliction of Emotional Distress; violated plaintiff Bruce Lings right

and constituted cruel and unusual punishment, a due process violation under the 8th Amendment to the United States constitution. And all named Defendants conspiracy of rights violated plaintiffs right and constituted deprivation of Equal Protection of law, a due process violation under the 14th Amendment to the United States

The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants unless this court grants relief which plaintiff seeks.

## Prayer For Relief

WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiffs:

A declaration that the acts and omissions described herein violated plaintiffs rights under the constitution and laws of the United States.

A preliminary and permanent injunction ordering defendants....

37

to stop violating incarcerated/indigent inmate/persons United States 8th Amend right "diliberate indifference to medical needs Indequate Medical Treatment/care; Denial of Necessary and adequate medical care and treatment; Medical Malpractice/Negligence, Patient Abandonment, Intentional Infliction of Emotional Distress of cruel and unusual punishment and Conspiracy of rights; Equal Protection of the laws of the United States 14th Amend.

Compensatory damages in the amount of $20,000,000.00 against each defendant jointly and severally

Punitive damages in the amount of $20,000.00 against each defendant.

A speedy Jury trial on all issues triable by Jury.

Plaintiffs cost in this suit.

(Noting that plaintiff has a pending case, U.S. Court Federal Claims Vaccine Case No 14-1017. And plaintiff Ling had originally filed the claim of "patient abandonment" in the Leon County small claim court case no. 2016-SC-001718 in which was dismissed with prejudiced for failure to file amended claim in compliance with F.S. Chp 766. Plaintiff subsequently filed Motion For Leave To Amend Claim Exh.MM

38

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: _____
Team Number: **4**
Institution: **Liberty C.I.**

| TO: (Check One) | ☒ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name **Bruce Ling** | DC Number **450791** | Quarters **B1-108L** | Job Assignment **Houseman** | Date **5-14-13** |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☒

During the month of April 2013, while at (RMC) West Unit, I filed a medical grievance about a incident with a nurse at sick call, concerning symptoms of my vaccine injury, dated 4-2-13. I had filed another medical grievance to the Warden, and addressing an issue, to Physician Amy Kirkland at Wakulla C.I. / Work Camp, concerning my urological problems. But I have not yet received a response from either grievance, being that it has been well over (20) days.

Could you please locate the where abouts of the above mentioned grievances so that I may be able to exhaust my administrative remedies.

All requests will be handled in one of the following ways:  1) Written Information or  2) Personal Interview.  All informal grievances will be responded to in writing.

───────── **DO NOT WRITE BELOW THIS LINE** ─────────

**RESPONSE**                          DATE RECEIVED: **MAY 21 2013**

RMC was contacted and state they do not have any grievances from you during the month of April 2013.

[The following pertains to informal grievances only:

Based on the above information, your grievance is **Denied**. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): **M. Hattaway** | Date: **5/22/13** |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.                     **5-159**

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)                     **39**
Incorporated by Reference in Rule 33-103.005, F.A.C.     **Exh A1-5**

Case 4:17-cv-00263-MW-CAS    Document 1    Filed 06/09/17    Page 40 of 98



# FLORIDA DEPARTMENT OF CORRECTIONS
## INSPECTOR GENERAL OFFICE LOG SYSTEM
## GRIEVANCE LOG SEARCH RESULT

| SEARCH | **(209) R.M.C.- MAIN UNIT GRIEVANCE LOG** | CHANGE FACILITY |
|---|---|---|

### SEARCH RESULT ( DETAILS FOR CASE   1304 - 209 - 146 )

| | | | |
|---|---|---|---|
| **Grievance Log Number:** | 1304 - 209 - 146 | **Facility:** | 209 - R.M.C.- MAIN UNIT |
| **Inmate Name:** | LING, BRUCE  (450791) | **DR Charge:** | **Disciplinary Date:** |
| **Inmate Location:** | 120 - LIBERTY C.I.  (B1108L) | **Number of Extensions:** | |
| **Grievance Facility:** | 209 - R.M.C.- MAIN UNIT | | |
| **Class Code:** | 07A - GENERAL MEDICAL (MEDICAL) | | |
| **Employee Responsible:** | HEALTH SERVICES | | |
| **Disposition:** | DENIED | | |

**DATE**

| | | | |
|---|---|---|---|
| **Received:** | 04/26/2013 | **Responded:** | 04/30/2013 |
| **GAAF Received:** | | **Mailed:** | 05/06/2013 |
| **Referred:** | 04/26/2013 | **Due Date:** | |
| **Response Received:** | | | |

**Disposition Reason:**

**Emergency:** no          **Chemical Used?** no

**RESPONSE COMMENTS**
Your formal grievance has been received, reviewed, and responded to. Ling Bruce Dc#450791 1304-209-146 04/30/13 Your overall healthcare is the responsibility of DOC Health Services staff. If after evaluation it is determined additional treatment is needed it will be ordered by your primary care physician. You are currently housed at Liberty C.I. and will need to address your issues with the sick call process. Grievance is denied. You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by paragraphs 33-103.007(3) (a) and (b), F.A.C., and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

**OTHER COMMENTS**

| Subjects |
|---|

---

[ <<BACK ]    [ PRINT RECEIPT ]

Wednesday, June 19, 2013

40

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☒ Warden    ☐ Assistant Warden    ☐ Secretary, Florida Department of Corrections

From: Ling _____ Bruce _____ A _____    450791    Liberty C.I.
      Last      First    Middle Initial      Number      Institution

---

Part A – Inmate Grievance

This medical grievance is filed pursuant to chp.33-103.011(2), as extension of time period to file instant grievance being that it was not feasible to file this grievance within the relevant time periods because of ongoing and or unresolved medical issues. Grievant Ling made a good faith effort to file in a timely manner, but there was no diagnosis or attempts of Nurse/Doctor Amy Kirkland to do further follow ups to provide a proper diagnosis of urological, and odd symptoms complained of, consequently leaving grievant with no choice but to seek further remedy, relief or diagnosis at subsequent correctional institutions. See grievant Ling's medical records, sickcalls and request forms concerning his urological and odd symptoms complaints while at Wakulla C.I and WorkCamp.   Once a medical procedure had been performed by a Urologist at (RMC) Main Unit on 4-4-13, grievant Ling was notified by a female medical staff, that the Urologist had discovered that his prostate was enlarged and that it was pressing up against the ureathra, complicating the urine flow, and that he did not see any type of blockage. While at Wakulla W.C., Ling recalls inquiring about, and requesting that a prostate and testicle examination be performed, but was told by Amy Kirkland and staff that he was too young being under (40) years old. More specifically Ling recalls inquiring and requesting that Amy Kirkland give him medication or something that would stop him from urinating so frequently, especially at night, because he was so tired from losing sleep." When she had asked Ling, "What do you want me to do." Upon Ling reply, Amy Kirkland responded to him by stating, "You are just being lazy by not wanting to get up in the middle of the night to use the restroom, and I'm not going to give you any medication, and the trace of protiene in your urine is nothing to be alarmed about, because the urine samples we took is showing that everything is just fine". Ling remembers the above incident because it psychologically affected him. Due to Amy Kirkland's negligence in not conducting follow ups to Ling's serious urological problems, and her deliberate indifference in not caring for and treating the urological and other odd symptoms Ling suffered from, when not taken seriously because of his age and outer appearance, thus caused more pain and suffering in addition to his prostate enlarging, with subsequent complication from the "Flushot," exacerbating prostate. As relief, Ling would like an explanation from Amy Kirkland of why she did not use professional judgment.

May 29, 2013 _____        Bruce A. Ling    450791
       DATE                           SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ / _____

Mailed 6/7/13    M. Hattaway                # ____    Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____    Institutional Mailing Log #:_____    _____
                    (Date)                                                                          (Received By)

MAY 31 2013    # 1305-120 — 122    M. Hattaway

070
ASST. _____ OF PROGRAMS

DISTRIBUTION:    INSTITUTION/FACILITY        CENTRAL OFFICE
                INMATE (2 Copies)            INMATE
                INMATE'S FILE                INMATE'S FILE - INSTITUTION/FACILITY
                INSTITUTIONAL GRIEVANCE FILE CENTRAL OFFICE INMATE FILE
                                             CENTRAL OFFICE GRIEVANCE FILE

(Effective 2/05)        Incorporated by Reference in Rule 33-103.006, F.A.C.        A3

**PART B - RESPONSE**

| LING, BRUCE | 450791 | 1305-120-122 | LIBERTY C.I. | B1108L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal was received, reviewed and evaluated.

Your formal grievance was not received within 15 calendar days of the date on which the incident or actions being complained about occurred; you are outside the time frame for filing a grievance. The issue you are grieving occurred at another institution. You were received at Liberty C.I. May 3, 2011.

Consider this formal grievance Returned Without Processing.

You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.

CONFIDENTIALITY NOTICE: This message and any attachments are for the sole use of intended recipient(s) and may contain confidential and privileged information that is exempt from public disclosure. Any unauthorized review, use, disclosure, or distribution is prohibited. If you have received this message in error, contact the sender (by phone or reply electronic mail) and then destroy all copies of the original message.

W.D. ROWELL, M.D.
REGIONAL MEDICAL DIRECTOR
MEDICAL EXECUTIVE DIRECTOR

| SIGNATURE AND TYPED OR PRINTED NAME | SIGNATURE OF WARDEN, ASST. WARDEN, OR | 6/7/13 |
|---|---|---|
| OF EMPLOYEE RESPONDING | SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

A4

42

STATE OF FLORIDA
**DEPARTMENT OF CORRECTIONS**

JUN 1 3 2013

DEPARTMENT OF CORRECTIONS
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**
INMATE GRIEVANCES

TO: ☐ Warden   ☐ Assistant Warden   ☒ Secretary, Florida Department of Corrections

From: <u>Ling      Bruce      A.</u>      <u>450791</u>      <u>Liberty Correctional Inst.</u>
Last      First      Middle Initial      Number      Institution

| Part A -- Inmate Grievance | 13-6-18512 |
|---|---|

This is an appeal to Formal grievance log # 1305-120-122.

As demonstrated in Formal grievance, it was not feasible to file the Formal grievance within the relevant time periods because Ling's urological issues were ongoing and unresolved at Wakulla C.I./WorkCamp. But that a good faith effort to file in a timely manner was made. Ling does believe that he had filed a grievance concerning his urological issues while still at "Wakulla", but he can't be for certain. An extension should be granted for this grievance because of the extenuating circumstances of Ling's medical condition without a diagnosis, as explained in Formal grievance. Grievant Ling avers that this appeal can be treated as an original grievance to the Secretary to have extension of time granted as set out in Chp.33-103.011(d)(2). Technically the day of the incident was the day that the urologist discovered Ling's enlarged prostate and gave a delayed diagnosis due to negligence of Amy Kirkland and other medical staff. Ling filed a grievance to Amy Kirkland thereafterwards See, attached grievance to the Warden.

Wherefore grievant Ling respectfully request for the same relief as requested for in attached "Formal grievance", in addition to having his health restored back to normal as was before being committed to the Department of Corrections.

<u>June 11, 2013</u>      <u>Bruce A. Ling      450791</u>
DATE      SIGNATURE OF GRIEVANT AND D.C. #

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _____ / _____

\#      Signature

07H

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

120

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Remedy's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on:_____      Institutional Mailing Log #:_____      <u>1305-120-122</u>
(Date)      (Received By)

1304-209-146

DISTRIBUTION:      INSTITUTION/FACILITY      CENTRAL OFFICE
      INMATE (2 Copies)      INMATE
      INMATE'S FILE      INMATE'S FILE - INSTITUTION./FACILITY
      INSTITUTIONAL GRIEVANCE FILE      CENTRAL OFFICE INMATE FILE
            CENTRAL OFFICE GRIEVANCE FILE      A5

DC1-303 (Effective 2/05)      Incorporated by Reference in Rule 33-103.006, F.A.C.

43

WITH AGENCY CLERK

JUL 29 2013

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| LING, BRUCE | 450791 | 13-6-18512 | LIBERTY C.I. | B1114U |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative review has been received, reviewed, and evaluated.

You will need to re-start the grievance process after you are seen by medical at your current location.

Based on the foregoing information, your appeal is returned without action.

M. Solano

| | | 7/25/13 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

44

A.6

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

## INMATE REQUEST

Mail Number: _____
Team Number: 1
Institution: Liberty C.I.

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☑ Mental Health | ☐ Dental ☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name **Bruce Ling** | DC Number **450791** | Quarters **H1-16 L** | Job Assignment **Houseman** | Date **12-6-11** |
|---|---|---|---|---|---|

**REQUEST**                                  Check here if this is an informal grievance ☐

To whom this may concern, I've been going to medical about an issue about my blood pressure and health for some time now. About a month ago I experienced some problems with my head (brain) breathing, dizziness, fatigue and a number of other problems associated with it. See medical record. Some of the test that the medical staff performed has come back normal and others they have no explanation or answer for. I have been attempting to get certain medical passes because of my problems and the effects they have on my work and overall performances. I am placed in bad situations with staff members because medical is saying that they can't find anything wrong with me. No one has monitored my daily activities, but I have shown medical the physical change in my neck such as the knots near my vein/artery where its tender and sends a sensation to my brain. I am having trouble focusing mainly on conversations, and have difficulty writing. Dr. Salvador refuses to accept the fact that I am having physical medical problems, and that I may need a (CAT) and (MRI) scan. She asked when was the last time I've been to Mental Health. I informed my family that I would have a recorded conversation audio/video

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal I~~nterview~~ informal grievances will be responded to in writing.

**RECEIVED**
**DEC 07 2011**
**MEDICAL RECORDS DEPARTMENT**
**LIBERTY CORRECTIONAL INST.**

──────── **DO NOT WRITE BELOW THIS LINE** ────────

**RESPONSE**                              DATE RECEIVED:

Seen 12/7/11

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): _____ | Date: 12/7/11 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

Exh B1-3

DC6-236 (Effective )

45

Incorporated by Reference in Rule 33-103.019, F.A.C.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

Mail Number: _____
Team Number: 4
Institution: Liberty C.I.

| TO: (Check One) | ☐ Warden  ☐ Asst. Warden | ☐ Classification  ☐ Security | ☑ Medical  ☐ Mental Health | ☐ Dental  ☐ Other Mrs. Salvador |
|---|---|---|---|---|

| FROM: | Inmate Name Bruce Ling | DC Number 450791 | Quarters C1-02 | Job Assignment Houseman | Date 4-15-12 |
|---|---|---|---|---|---|

**REQUEST**                    Check here if this is an informal grievance ☐

Mrs. Salvador, when I visited you on 4-13-12, you began to touch under my chin and neck area. I told you that there were knots (lymphonoid) You stated that you could not feel them, and also that maybe you should refer me back to mental health because I was feeling things that were not there. Upon your statement, I demonstrated to you that the way you had pressed upward under my chin, caused you to push the lymponoids inwards to where you could not feel them, because you were not feeling around for them. You later showed me a document, and had explained that my bloodwork test had indicated that my liver, kidneys, thyroids and everything else were fine within, but you didn't mention my bladder or brain. I explained that I've got the symptoms of patients in whom suffers from adverse reactions from Influenza and Hepatitis vaccinations, and I've been suffering for over (5) months, And I need to know if you or your staff had reported my vaccine Injury to the Secretary of Health and Human Services as required by health care providers and vaccine manufacturers, section 300aa-25. I may have mercury poison due to the thimerosal in the vaccine, but no one has conducted the urine and hair test previously requested by me. Sunday, while getting a blood pressure check, I had requested that the nurse take note of my sore throat (symptom). She told me to do a sick call. I now request answers to the above, and a copy of the bloodwork test result for a better understanding. Thank You

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

RECEIVED
APR 17 2012
MEDICAL DEPARTMENT
LIBERTY CORR. INST.

--- **DO NOT WRITE BELOW THIS LINE** ---

**RESPONSE**                    DATE RECEIVED:

Inmate Ling

You have been evaluated by a licensed clinician & found no abnormalities. You have not been diagnosed with chronic fatigue syndrome. I referred you to organizations to get info on this. That is your right but it doesn't mean you have it. The nurse was correct in telling you to fill out a sick call for sore throat. That's protocol. You need to discuss your other issues through sick call as well, not on an inmate request form. You need to speak directly with staff so we can figure out exactly what it is that you war

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): G. GILLEY, SLPN  LIBERTY C.I. | Date: 4-2012 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

B2

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )                    46
Incorporated by Reference in Rule 33-103.019, F.A.C.

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**INMATE REQUEST**

Mail Number: _____
Team Number: 4
Institution: Liberty C.I.

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☒ Medical ☐ Mental Health | ☐ Dental ☐ Other Ms. Salvador |
|---|---|---|---|---|

| FROM: | Inmate Name Bruce Ling | DC Number 450791 | Quarters B1-144P | Job Assignment N/A | Date 7-23-13 |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☐

Today I spoke with you about my urology consult. I brought to your attention about the Urologist noting that my constipation is in no relation to my BPH problem. You stated that you would give me soft stool pills, but for me to try not to use them often. I don't believe that the pills will be a sufficient resolve to my constipation, because it may be that I need a special diet?

A sufficient diagnosis of why I'm constantly constipated would be proper because as I've explained before, when straining to urinate it causes gas that somehow interfere with the urine flow, building pressure in my body. When I have to defacate and urinate at the same time, using force from straining? I request for a diagnosis and treatment.

All requests will be handled in one of the following ways: 1) Written Information or  2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                                    DATE RECEIVED: _____

RECEIVED
JUL 25 2013
MEDICAL RECORDS DEPARTMENT
LIBERTY CORRECTIONAL INST.

~~I HAVE REVIEWED YOUR REQUEST. IF YOU HAVE A MEDICAL PROBLEM, YOU MAY CONSIDER SIGNING UP FOR SICK CALL. HEALTH CARE IS ASSESSED THROUGH SICK CALL BY A NURSE EVALUATING YOU.~~

Stool softeners help reduce constipation/straining by softening the stool. If you have more concerns regarding further medical questions, concerns, or diagnosis please fill out sick call request.

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): [signature] A/FAIRCLOTH, SLPN LIBERTY C.I. | Date: 7/31/13 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

---

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)

Incorporated by Reference in Rule 33-103.005, F.A.C.

B3

47

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**INMATE REQUEST**

Mail Number: _____
Team Number: 4
Institution: Liberty C.I.

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☑ Medical ☐ Mental Health | ☐ Dental ☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name Bruce Ling | DC Number 450791 | Quarters C1-02 | Job Assignment Houseman | Date 5-14-12 |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☐

I'am responding to your response of 5-9-12 request to medical. First I would like to make an assertion that the nurse who had administered the influenza vaccine into my arm did nothing more than gave me a document to "possibly" read and sign. Even if I had decided to change my mind about the vaccine, it wouldn't have made a difference because the nurse had already administered the vaccine while talking to me about being scared or nervous about the long needle. She did not give me anything to sign until after she had administered the vaccine. The nurse had never mentioned or explained to me about any adverse reaction to the influenza vaccine. I appreciate the attachements you sent but I don't totally agree with all of the information. Although the vaccine, may not have contained thimerosal, it doesn't conclude that I don't have the poison in my body or that the influenza vaccine did not cause my injuries. See pg 1 of 2, the last paragraph sentence. I've learned over the years that the (FDA) and other organizations practices are at times un-ethical. There are many studies, scientific evidence, organizations and federal cases that utterly oppose the argument that thimerosal is safe in vaccines. What this medical department hasn't sent to me, is information about adverse reactions to influenza and other vaccines. See your attachment pg 10 [Adverse Reactions (6.1)]. Please address above.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                                    DATE RECEIVED:

**RECEIVED**
MAY 16 2012
MEDICAL DEPARTMENT
LIBERTY CORR. INST.

Inmate Ling,
    It is your responsibility as an adult to read something before you sign it. If you do not understand, then it is your responsibility to ask questions.
    Your issue has been addressed numerous times and there is not anything different that I can tell you about it. If you have any more concerns about thimerosal or the flu vaccine then you need to address it through Sick Call. We are getting nowhere through inmate requests.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): _____ GILLEY, SLPN LIBERTY C.I. | Date: 5-18-12 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )                    48
Incorporated by Reference in Rule 33-103.019, F.A.C.

Exh C1-2

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

# INMATE REQUEST

Mail Number: _____
Team Number: 4
Institution: Liberty C.I.

| TO:<br>(Check One) | ☐ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | ☑ Medical<br>☐ Mental Health | ☐ Dental<br>☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name<br>Bruce Ling | DC Number<br>450791 | Quarters<br>C1-02 | Job Assignment<br>Houseman | Date<br>5-22-12 |
|---|---|---|---|---|---|

## REQUEST

Check here if this is an informal grievance ☐

This request is respectfully in response to the response you had made on the 5-14-12 request I had submitted. I agree that I should have been more responsible in asking more questions about the "influenza vaccine" before the nurse prepared for administration, instead of during preparation, it happends so quickly. I assert that the nurse had caught me off guard when she had immediately injected the influenza vaccine while we were still conversing about the shot. Once the vaccine had been administerd, the nurse said, "See that didn't even hurt, did it". Being that the vaccine was being administerd by a licensed health care personel or provider, I mistakenly assumed that she would correctly follow vaccination procedures, in accordance with the law. The consequence of the nurses actions may not have been intentionally to injure me, but was more so neglegent on her part, unfortunately. It is true as you said that this issue has been addressed numerous times without resolve, through sickcall and request. But it could quickly be resolved if only the Chief health officer would thoroughly research and investigate my complaints, also making contacts with other health care facilities/clinics I've visited in the past. In doing so it would prevent me from further being a victim of containment cost by practice of defensive medicine and medical care. I was never informed of influenza vaccine hazards.

All requests will be handled in one of the following ways: 1) Written Information or  2) Personal Interview.  All informal grievances will be responded to in writing.

---
**DO NOT WRITE BELOW THIS LINE**
---

## RESPONSE

DATE RECEIVED: _____

**RECEIVED**
MAY 23 2012
MEDICAL DEPARTMENT
LIBERTY CORR. INST.

You are making statements in this request & not requesting anything. Anymore concerns about this issue needs to be addressed through sick call

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved).  If your informal grievance is denied,

you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature) | | Date: 6-8-12 / 0254 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.  If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )

49

Incorporated by Reference in Rule 33-103.019, F.A.C.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

## INMATE REQUEST

Mail Number: _____
Team Number: _____
Institution: **Liberty C.I.**

| TO: (Check One) | ☐ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | ☐ Medical<br>☑ Mental Health | ☐ Dental<br>☐ Other **Ms. Sandin** |
|---|---|---|---|---|

| FROM: | Inmate Name **Bruce Ling** | DC Number **450791** | Quarters **CI-02-S** | Job Assignment **Houseman** | Date **12-27-11** |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☐

I had a call-out with you several weeks ago upon being referred by medical staff. Prior to my call-out I had sent you an emergency request form in which you reveiwed at my call-out. However, I never received a copy back of the emergency request to you. Could you please send me my copy of the emergency request for my records?

Since my call-out with you nothing much has really changed with my condition, nor have I received the proper treatment, as I had discussed with Dr. Rodriguez. This ordeal has had an psychological affect on me, causing me to have bad thoughts when I suffer from untreated symptoms.

Thank You

---

All requests will be handled in one of the following ways:  1) Written Information or   2) Personal Interview. All informal grievances will be responded to in writing.

**RECEIVED**

**DO NOT WRITE BELOW THIS LINE**

DEC ~~~

MEDICAL RECORDS DEPARTMENT
LIBERTY CORRECTIONAL INST

**RESPONSE**                                    DATE RECEIVED: _____

Scheduled for 1/5/12

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | | Date: 1/4/12 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code

Ex h 01-2

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )                              50

**INMATE REQUEST**

Mail Number: _____
Team Number: **40**
Institution: **(RMC)**

| TO: (Check One) | ☐ Warden | ☐ Classification | ☐ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☐ Asst. Warden | ☐ Security | ☒ Mental Health | ☐ Other _____ |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Bruce Ling | 450791 | E1108L | N/A | 3-26-13 |

**REQUEST**                                   Check here if this is an informal grievance ☑

For the past couple of weeks I have been contemplating on declaring a "psychological emergency" because I have been having negative thoughts on my mind about the pain and suffering that I go through daily. I feel as though the medical department is still neglecting my need for medical attention. It is known to the medical staff that I suffer from a Influenza Vaccine injury, and urological problems. I'am being told to be patient about my appointment to see the urologist, but no one has attempted to submit another consult in order for me to see a ne-urologist, or immunologist for the chronic fatigue and Guillain-Barré-Syndrome symptoms that I've been suffering from since November of 2011. I have explained to medical and mental health that this whole ordeal has had a psychological effect on my mind because I have no medical passes for pain, suffering, diet etc. I request help.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

DO NOT WRITE BELOW THIS LINE

RECEIVED APR 02 2013
HEALTH SERVICES ADMINISTRATION
RECEPTION AND MEDICAL CENTER

RECEIVED MAR 29 2013
RMC WEST UNIT
MEDICAL RECORDS

**RESPONSE**                    DATE RECEIVED: _____

Mental Health @ West Unit has been notified of your grievance. A copy has been forwarded to them.

[The following pertains to informal grievances only:
Based on the above information, your grievance is **Returned**. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): Luther K. LUTHER CLERK SPECIALIST RECEPTION & MEDICAL CENTER | Date: 4-3-13 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 6/12)                        51
Incorporated by Reference in Rule 33-103.005, F.A.C.

Exh. D-2



# FLORIDA
# DEPARTMENT of
# CORRECTIONS

Governor
**RICK SCOTT**

*An Equal Opportunity Employer*

Secretary
**KENNETH S. TUCKER**

501 South Calhoun Street, Tallahassee, FL 32399-2500

http://www.dc.state.fl.us

October 29, 2012

Bruce Ling, DC#450791
Liberty Correctional Institution
11064 NW Dempsey Barron Road
Bristol, Florida  32321

Dear Inmate Ling,

This letter is in response to your Emergency Petition for Medical Furlough and/or Conditional Medical Release that was sent to the Governor's Office.

Liberty Correctional Institution is following proper protocol as far as providing you treatment. Consults have been submitted for you to see the urologist and neurologist.  Your urology appointment has already been approved.

Inmates do not have a right to conditional medical release nor to a medical evaluation to determine eligibility for such a release.

If you have any further questions regarding your medical care, please do not hesitate to contact me.

Sincerely,

Diann O. Smith
Sr. Health Services Administrator
Liberty Correctional Institution

/ds

Copy to:  Patricia Donaldson, DOC, Ofc of Health Services
          Noel E. Mercer, Warden, Liberty C.I.

52

Exh E/-5



**Mission:**
To protect, promote & improve the health of all people in Florida through integrated state, county & community efforts.

**Florida HEALTH**

**Vision:** To be the **Healthiest State** in the Nation

**Rick Scott**
Governor

**John H. Armstrong, MD, FACS**
State Surgeon General & Secretary

February 10, 2014

Mr. Bruce Antonio Ling
2236 David & Sibbie Lane
Tallahassee, FL 32317

Dear Mr. Ling:

Thank you for writing to Governor Scott. He asked me to respond to your electronic message regarding your claim for Supplemental Security Income benefits. I was very sorry to learn of your health problems, and understand your situation is very distressing to you.

Our records show that your most recent claim with the Social Security Administration was denied on January 13, 2014. The SSA defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable mental or physical impairment(s) which can be expected to last for twelve continuous months or result in death. Their definition differs from other agencies and entities. The specific medical criteria used by the SSA to determine medical eligibility are quite strict. An applicant's or physician's subjective statement of disability, without corroborating clinical and laboratory evidence, is not sufficient for Social Security purposes to establish that a disabling impairment exists.

You have the right to appeal this determination. The SSA can provide more information about your appeal rights, and assist you in filing for reconsideration. You can speak to a claims representative about your eligibility by calling toll-free 1-800-772-1213, or find information about disability benefits on SSA's web site, www.ssa.gov/disability.

If you do file for reconsideration, please notify my staff member, Ms. Kathleen Jones, and she will monitor your claim throughout the adjudication process. She may be reached, toll-free, at 1-800-499-6590, extension 5225.

I appreciate you writing to the Governor about your situation, and I hope this is responsive to your concerns.

Sincerely,

Rhonda J. Wilson
Director
Division of Disability Determinations

RJW/kj

**Florida Department of Health**
Division of Disability Determinations
P.O. Box 7118 • Tallahassee, FL 32314-5270
PHONE: 850-488-4222 • FAX 850-617-4978
For the Hearing Impaired - Florida Relay Services 711 or 1 (800) 955-8771

53

**www.FloridasHealth.com**
TWITTER:HealthyFLA
FACEBOOK:FLDepartmentofHealth
YOUTUBE: fldoh

E2

Mr. Bruce Ling
February 10, 2014
Page Two

If you cannot afford an attorney, there are attorneys who assist those applying for Social Security Disability for a portion of the lump sum payment they may receive. The Florida Bar can assist you with referrals to legal firms who provide this service. Please contact the Florida Bar directly.

The Florida Constitution limits the Governor's intervention in matters that should be resolved through the court system. The Florida Bar offers a Lawyer Referral Service which you may contact at the address below.

The Florida Bar
651 East Jefferson Street
Tallahassee, Florida 32399-2300
Toll-free: (800) 342-8011
www.floridabar.org

The Florida Department of Health may be able to assist you with information about services rendered by the County Health Departments and has an assortment of health related programs, such as the Office of Volunteer Programs, that may prove helpful to you. To assist you, I forwarded your correspondence to the Florida Department of Health for review. If you want to contact that department directly, please use the information provided below.

Thank you again for contacting the Governor's office.

Sincerely,

Peggy Kassees
Office of Citizen Services
Executive Office of the Governor

PK/cas
cc/enc: Florida Department of Corrections
Inspector General
501 South Calhoun Street
Tallahassee, FL 32399-2500

Department of Health
2585 Merchants Row Boulevard
Tallahassee, Florida 32399
(850) 245-4321
health@doh.state.fl.us

54

E3

# Office of the Governor

THE CAPITOL
TALLAHASSEE, FLORIDA 32399-0001

www.flgov.com
850-488-7146

**RICK SCOTT**
**GOVERNOR**

February 10, 2014

Mr. Bruce Ling
2236 David & Sibbie Lane
Tallahassee, Florida 32317

Dear Mr. Ling:

Thank you for contacting Governor Rick Scott. The Governor appreciates your concerns regarding the medical care you received while in prison. Governor Scott asked me to respond on his behalf.

To assist you, I forwarded a copy of your correspondence to the Florida Department of Corrections, Inspector General's office for review. If you want to contact the department directly, please use the information provided below.

The Florida Department of Health, Division of Disability Determinations, is the state office that makes the determination of an applicant's medical eligibility based on Social Security criteria. In some instances, they can assist persons who experience difficulty navigating the Social Security Disability system. To assist you, I forwarded a copy of your letter to the Division for their review. If you want to contact that office directly, please use the information provided below.

For further assistance, you may wish to contact the United States Social Security Administration by writing to the address below

Social Security Administration, Region Four
61 Forsyth Street SW, Suite 23T29
Atlanta, Georgia 30303-8907
Toll-free (800) 772-1213
www.socialsecurity.gov/disability

If you need help with your application for Social Security Disability benefits, or choose to appeal a decision made by the Social Security Administration, you may want to contact an attorney to provide legal advice.

55

E4

**Subject:**   Scheduling Request EOG:000311038

**From:**      Scheduling Requests (Scheduling.Requests@eog.myflorida.com)

**To:**        lingdynasty@yahoo.com;

**Date:**      Friday, August 12, 2016 1:34 PM

Dear Mr. Ling,

I hope this email finds you well. Thank you for inviting Governor Scott to meet with you. Unfortunately, the Governor will be unable to do so at this time. In the absence of the Governor, we have forwarded your request to Surgeon General Dr. Celeste Philip of the Department of Health. If we can be of any further assistance, please do not hesitate to contact us.

Sincerely,

Elana Samuels
Executive Office of the Governor
Scheduling Department
Office: 850-717-9207

E5

# INMATE REQUEST

**STATE OF FLORIDA**
DEPARTMENT OF CORRECTIONS

Mail Number: _____
Team Number: _____
Institution: Liberty C.I

| TO: (Check One) | ☐ Warden | ☑ Classification | ☐ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☐ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other Davis |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Bruce Ling | 450791 | CI-02 | Houseman | 1-31-12 |

## REQUEST

Check here if this is an informal grievance ☐

This request is in response to my 1-23-12 request to you. I have made medical aware of my constant suffering from chronic illnesses. I was requesting a conditional Medical Release and or Type A Medical Furlough because I have been constantly suffering from symptoms of Chronic illnesses for over the past 80 days and it has seemingly been determined that medical staff cannot provide me adequate medical attention and or treatment for my health condition. It is evident and greatly believed that I suffer from (Chronic Fatigue Syndrome) amongst other problems requiring an expert specialist. I was recently told that (DOC) would not provide the treatment that I would need to be fully functional in prison as an able body perhaps leaving me permanently incapacitated and terminally ill. Unbeknownst to me, I had been suffering from milder symptoms as a youth but I nor the Doctors did not know what was wrong. The pain and suffering has now become unbearable at times causing me to think death may appear better than the suffering. My childrens mother and I both agree that it would be in the best interest for my health that I be allowed to visit an outside Doctor or hospital who would be able to provide me with an adequate treatment for a longer stable healthier life for my childrens sake. Thank Yall.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE

DATE RECEIVED: **RECEIVED** FEB 6 2012 MEDICAL DEPARTMENT LIBERTY CORRECTIONAL INST.

You have not been declared terminally ill or permanently incapacitated, therefore you do not meet the criteria for Conditional Medical Release. Inmates do not have a right to conditional medical release, nor to a medical evaluation to determine eligibility for such a release.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature) | | Date: 2/6/12 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )

Incorporated by Reference in Rule 33-103.019, F.A.C.

Exh F

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS

### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☑ Warden          ☐ Assistant Warden          ☐ Secretary, Florida Department of Corrections

From: __Ling__  __Bruce__  __A__          __450791__          __Liberty Correctional Inst.__
　　　Last　　First　　Middle Initial　　　　　Number　　　　　Institution

Part A – Inmate Grievance          1112 - 120 - 004

Today, 12-2-11, I was experiencing labored breathing, weakness, dizzyness, nasea, body ache, suffering, and the same problems dealing with my head (brain), that I have been to sickcall and (medical emergency) several times for. While being seen by nurse _____, and as she questioned me, she spoke to me in an aggressive unprofessional manner, causing me anxiety and stress. As I attempted to respond and explain to her, she would cut in on my replies in such a snappy way as if she were aggitated with me and my request for medical attention. Some medical staff (turn deaf ears) to my complaints about my head problems and knot near my vein/artery in my neck where it is tender. After doing several test, nurse _____, stated that she would be charging me a $5.00 fee because it was not an emergency. I then explained to her that the nurse sitting right there told me that I should do a medical emergency whenever I am experiencing these problems again. Nurse _____, also had demanded that I get a shave and report to her the following day, Saturday. It appears to me that nurse _____, was being vindictive when charging me the $5.00 fee in an attempt to thwart me from receiving medical attention, and she was more concerned about me shaving than my health, aching and faintness (by standing in long line). She even denied my request to ask Dr. Salvador a question when she came into the office. I wanted to ask the Doctor a question pertaining to when she had pressed down on the top of my head in early November, while examining my back, because I walked away with a strange, odd weird feeling in my head, I felt would eventually go away. No one appears to want to hear me out, and no one has done test on my head or body such as a CAT scan and MRI scan. I think that maybe one of my organs is malfunctioning and that it has disrupted the flow of my blood and urine, possibly due to unmonitored highblood pressure over the years. In addition, I have a sleeping disorder that causes me to wake up frequently throughout the night, along with the frequent urinating; playing a big part in my extreme fatigueness. My biggest fears are a stroke, ruptured blood vessel, a tumor and even death. I request not to be seen by that nurse again; medical attention, and recorded (audio/video) visits to medical.

__December 4, 2001__          __Bruce A. Ling 450791__
　　　　DATE　　　　　　　　SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: ____ / ____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　#　　　Signature

Mailed
12/14/11  E. Maxp          INSTRUCTIONS

his form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

7-h          DEC 05 2011          Receipt for Appeals Being Forwarded to Central Office          E. Maxp

Submitted by the inmate on: _____          Institutional Mailing Log #: _____
ASST. WARDEN (Date) PROGRAMS          1112 - 120 - 004          (Received By)

DISTRIBUTION:　INSTITUTION/FACILITY　　　　CENTRAL OFFICE
　　　　　　　INMATE (2 Copies)　　　　　　INMATE
　　　　　　　INMATE'S FILE　　　　　　　　INMATE'S FILE - INSTITUTION/FACILITY
　　　　　　　INSTITUTIONAL GRIEVANCE FILE　CENTRAL OFFICE INMATE FILE
　　　　　　　　　　　　　　　　　　　　CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 2/05)          Incorporated by Reference in Rule 33-103.019, F.A.C.          Exh.G1-9

58

**PART B - RESPONSE**

| LING, BRUCE | 450791 | 1112-120-004 | LIBERTY C.I. | C1102S |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal was received, reviewed and evaluated.

You are addressing three separate issues in one formal grievance. The inadequate medical treatment will be addressed in this formal grievance however you have to file another formal grievance on the medical co-pay issue and a separate informal grievance on the complaints against a staff nurse.

You declared a medical emergency on 12/2/11 and your condition was not considered emergent. You were informed to use the sick call process. You were seen in sick call 12/5/11 by the clinician and lab-work was ordered. You are scheduled a follow up appointment. If you are in need of additional treatment, you will be informed when you are seen next week.

Based on the above consider this grievance Denied.

You may obtain further Administrative Review for your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by F.A.C. Chapter 33-103.007(3)(a) and (b), and forwarding to the Florida Department of Corrections 501 South Calhoun Street Tallahassee, FL 32399.

CONFIDENTIALITY NOTICE: This message and any attachments are for the sole use of intended recipient(s) and may contain confidential and privileged information that is exempt from public disclosure. Any unauthorized review, use, disclosure, or distribution is prohibited. If you have received this message in error, contact the sender (by phone or reply electronic mail) and then destroy all copies of the original message.

DR. S. RODRIGUEZ
WAKULLA CI

| SIGNATURE AND TYPED OR PRINTED NAME | SIGNATURE OF WARDEN, ASST. WARDEN, OR | DATE |
|---|---|---|
| OF EMPLOYEE RESPONDING    Liberty CI | SECRETARY'S REPRESENTATIVE | |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

59                                                          G2

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

TO: ☐ Warden      ☐ Assistant Warden      ☑ Secretary, Florida Department of Corrections

From: __Ling      Bruce      A__      __450791__      __Liberty Correctional Inst.__
     Last    First   Middle Initial      Number        Institution

---

Part A – Inmate Grievance      11-6-39207

This is an appeal to the denial of the Formal grievance log #1112-120-004, that I filed on December 4, 2011. To the extent that my 12-4-11, Formal grievance was construed as a grievance for inadequate medical treatment, and was denied based on the nurses assumption that my medical emergency was not an emergency, I respectfully disagree with the denial of my Formal grievance based on the facts following: When I had discovered that the nurses and Doctor could not find out the reason why I was having all of these problems, and would continue to deny the fact that something was actually wrong with my current health, I decided to do more research of my past health problems with the use of a library medical book, in which a nurse had attempted to dissuade me not to do, at my initial visits. Upon doing research, I discovered that an pre existing health issue had more severe symptoms than I had initially believed. (I should note that years ago I had prayed to God in faith to heal me, and I was getting the proper nutrients and vitamins when I was a free man). At the filing of my Formal grievance I had attached a news paper clipping, with an attempt to get the attention of the medical staff because it was obvious to me that their efforts to reach an adequate diagnosis had became poorer, especially when I had mentioned that a "flu shot" may have caused or triggered the symptoms. The lack of the staffs efforts to diligently find out if I had actually had other health issues aside from the high blood pressure, and them not listening to my health complaints, caused continued suffering. My current symptoms coupled with the others and the undetermined health issues that I have, could very well threaten my health even causing death. But as I had explained to the nurse it is my will to live that is keeping me alive, in which she responded, "Maybe the Lord don't want you here anymore", which was heard by other staff members, who appear to be intimidated. At this particular 12-2-11 medical emergency the nurse was unaware of my preexisting health condition, and just as I at the time was unaware of the neurological symptoms and the severity of them. Also it is evident that the medical staff who dealt with me was inexperienced in dealing with my particular health issues and hasn't had the proper training in dealing with such matters, causing the nurse to err when stating that my medical emergency was not an emergency because she was unaware at the time of what type of medical issues she was dealing with. Improper staff training and treatment

__December 16, 2011__
DATE

__Bruce A. Ling   450791__
SIGNATURE OF GRIEVANT AND D.C. #

---

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _____ / _____
                                                                                  #           Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: __12-21-11__      Institutional Mailing Log #: __00-676__      _____
           (Date)                                                                         Received By)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 2/05)      Incorporated by Reference in Rule 33-103.019, F.A.C.



MAILED/FILED
WITH AGENCY CLERK

JAN 1 8 2012

Department of Corrections
Bureau of Inmate Grievance Appeals

**PART B - RESPONSE**

| LING, BRUCE | 450791 | 11-6-39207 | LIBERTY C.I. | C1102S |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

It is determined that the response made to you by Dr. Rodriguez on 12/14/11 appropriately addresses the issues you presented.

It is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing.

Please be advised that an inmate does not have the right to a provider of choice.

Please be advised that this office cannot corroborate your allegations against the health care staff.

You are encouraged to cooperate with your health care staff by following the treatment regimen prescribed.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY.
UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Ebony O. Harvey IISC

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 1-13-12 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

61

G4

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

Mail Number: _____
Team Number: _____
Institution: __Liberty C.I.__

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☑ Medical ☐ Mental Health | ☐ Dental ☐ Other __Nurse__ |
|---|---|---|---|---|

| FROM: | Inmate Name __Bruce Ling__ | DC Number __450791__ | Quarters __C1-02-S__ | Job Assignment __Houseman__ | Date __12-15-11__ |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☑

As advised and directed, this is an informal grievance. See 12-4-11 Formal grievance log #1112-120-004. To whom this may concern, On 12-2-11 I declared a medical emergency because I was suffering from unknown symptoms. While being seen and questioned, you spoke to me in an aggressive unprofessional manner causing me anxiety and stress. You had also cut in on my replies in such a snappy way as if you were aggitated with me or something for when I had requested for medical attention. When you finished conducting the test, you stated that you would be charging me a $5.00 fee because it was not an emergency. I then explained to you that the nurse sitting right there had told me to declare a medical emergency when ever I am experiencing these problems again. You then became more vindictive and told me to get a shave and report to you the following day. It appeared to me that you were more concerned about me shaving than my health at the time. At a subsequent visit to see the nurse and while you were present, it was discovered and revealed that I did need medical attention and treatment because the symptoms I was having on 12-2-11 were more serious than you had initially believed. The symptoms were and is posing a threat to my overall health. Please seek counseling

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

**RECEIVED**

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                       DATE RECEIVED: **DEC 19 2011**

ASST. WARDEN OF PROGRAMS

The medical emergency you declared on 12/2/11 was not considered life threatening/emergent therefore the copay was applied correctly. As stated in formal grievance 1112-120-004 you were seen in sick call after you declared an emergency, was seen by the Clinician and are scheduled for follow up care. Nurses are firm, fair and consistent. The grievance process is not used for complaints regarding staff.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is __Denied__. (Returned, Denied, or Approved). If your informal grievance is denied,
you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): __Diann Smith__ | Date: __12/27/11__ |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

12-097

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )                    62
Incorporated by Reference in Rule 33-103.019, F.A.C.

G5

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

## REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

RECEIVED
SEP - 7 2012

TO: ☐ Warden    ☐ Assistant Warden    ☑ Secretary, Florida Department of Corrections

From: __Ling__ __Bruce__ __A__    __450791__    __Liberty Correctional Inst__
    Last    First   Middle Initial      Number        Institution

12-6-28942

---

Part A – Inmate Grievance

This is a "Formal grievance" pursuant to chp.33-103,002(13)(a) Emergency grievance of a sensitive nature 33-103.008.1(a) Grievance of Medical nature; and 33-103.019(1) Reprisal. Once again, I am compelled to file another grievance because I'm being affected in a personal way. Today I went to my medical call-out for a sickcall in which I was compelled to submit. To my surprise the Warden was present, and I was seen again by nurse Register in whom I had previously requested not to see again because of conflicts of interest issues. While at sick-call, I had informed nurse Register of another issue that had arisen concerning a job change. I explained to nurse Register that Sgt. Rogers told me that I would need a medical slip or pass stating that I would not be able to perform the newly assigned duties. Nurse Register immediately stated that I would not have any problems performing my newly assigned duties without even considering my health complaints in which I was at the sick call for. Nurse Register stated that I would need to take up the above issue with classification and security. As done before, by nurse Register, she threatened to have my shaving pass confiscated if I didn't get a shave and report back to her at a specific time (2:00 PM). This was an act of reprisal. Nurse Register acted in such a callous way because I was adamant about acquiring adequate medical treatment and care, specifically when I had inquired as to why haven't a specific blood test been sent to the lab to determine and provide proof that I am suffering from symptoms of a pre-existing health condition, in addition to not being seen by a neurologist for the damages caused by the Flu-shot as well. Upon requesting to Sgt. Rogers about allowing me to get a shave, he informed me that nurse Register was revoking my shaving pass. I had explained to Sgt. Rogers; and to nurse Register in the presence of the Warden, that my dorm, CM was not allowed to go out for canteen, shaves or haircuts for the past 3 or 4 days, and that I was on Law library callout earlier in the week. Revoking my shaving pass was another act of reprisal. Inmate "Tongue," a chucasion was told to get a shave by nurse Register, but he hadn't experienced the problems as I had. (discrimination). Sgt Rogers confiscated my shaving per request from nurse Register and forced me to shave with a razor. Sgt Rogers and nurse Register were attempting to compel me to violate a D.O.C rule. For me to have been punished for attempting to seek adequate medical care and treatment is inhumane, and now I fear more reprisal from medical staff and security

__September 2, 2012__
DATE

__Bruce A. Ling Jr.  450791__
SIGNATURE OF GRIEVANT AND D.C. #

---

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _____ / _____
                                                            #           Signature

DTh

### INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on:_____    Institutional Mailing Log #:_____    _____
               (Date)                                                              (Received By)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE | |
|---|---|---|---|
| | INMATE (2 Copies) | INMATE | |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY | |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE | |
| | | CENTRAL OFFICE GRIEVANCE FILE | |

G-b

DC1-303 (Effective 2/05)    Incorporated by Reference in Rule 33-103.006, F.A.C.

MAILED/FILED
WITH AGENCY CLERK

› 1 3 2012

**PART B - RESPONSE**

Department of Corrections
LING, BRUCE  Bureau of Grievance Appeals  450791      12-6-28942          LIBERTY C.I.                                    C1102S
_____INMATE_____         _NUMBER_      _GRIEVANCE LOG NUMBER_   _CURRENT INMATE LOCATION_         _HOUSING LOCATION_

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY.
UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

This grievance is not accepted as a grievance of an emergency nature by Health Services, Central Office, Tallahassee.

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your appeal at the appropriate level at the institution.  You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.  Attach a copy of this response to your re-filed grievance.

Based on the foregoing information, your grievance is returned without action.

T. Bowden

                                                                                                    9/13/12
_____          _____          _____
SIGNATURE AND TYPED OR PRINTED NAME         SIGNATURE OF WARDEN, ASST. WARDEN, OR                DATE
OF EMPLOYEE RESPONDING                       SECRETARY'S REPRESENTATIVE

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

64                                                                                                    G7

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☐ Warden    ☒ Assistant Warden    ☐ Secretary, Florida Department of Corrections

From: __Ling    Bruce    A__    __450791__    __Liberty C.I.__
    Last     First     Middle Initial       Number        Institution

Part A – Inmate Grievance    1209-120-046

On Sept. 2, 2012 I filed an Emergency Grievance dealing with an incident with several situations, in which was sent back to me for being in non-compliance; and allowing me to resubmit a grievance. See attachment log # 12-6-28942. Once again I am compelled to file another grievance because I'm being affected in a personal way. Today I went to my medical call-out for a sick-call in-which I was compelled to submit. To my surprise the Warden was present, and I was seen again by nurse Register in whom I had previously requested not to see again because of conflict of interest issues. While at sick-call I had informed nurse Register of another issue that had arisen concerning a job change. I explained to nurse Register that Sgt. Rogers told me that I would need a medical slip or pass stating that I would not be able to perform the newly assigned duties. Nurse Register immediately stated that I would not have any problems performing my newly assigned duties without even considering my health complaints in which I was at sick-call for. Nurse Register stated that I would need to take up the above issue with classification and security. As done before, by nurse Register, she threatened to have my shaving pass confiscated if I didn't get a shave and report back to her at 2:00 PM. This was an act of reprisal. Nurse Register acted in such a callous way because I was adamant about acquiring adequate medical treatment and care, specifically when I had inquired as to why haven't a specific blood test been sent to the lab to determine and provide proof that I'm suffering from symptoms of a pre-existing health condition, in addition to not being seen by a neurologist for damages caused by the "Flu-shot" as well. Upon requesting to Sgt. Rogers about allowing me to shave, he informed me that nurse Register was revoking my shaving pass. I had explained to Sgt. Rogers; and to nurse Register in the presence of the Warden, that my dorm (C1) was not allowed to go out for canteen, shaves or haircuts for the past 3 or 4 days, and that I was on law library call-out earlier in the week. Revoking my shaving pass was another act of reprisal. Inmate "Jongue", a caucasian was told to get a shave by nurse Register, but he hadn't experienced the problems as I had (discrimination). Sgt. Rogers confiscated my shaving pass per request from nurse Register and forced me to shave with a razor. Sgt. Rogers and nurse Register were attempting to compell me to violate a D.O.C. rule. For me to have been punished for attempting to seek adequate medical care and treatment is inhumane, causing facial scars of razor bumps and cuts. Now I fear more reprisal from medical staff and security. I request that I be treated fairly, and as a patient should be. I also request for adequate medical care and treatment as relief, in addition to receiving my shaving pass and all other proper medical passes.

__September 22, 2012__         __Bruce A. Ling Jr.    450791__
     DATE              SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ / _____

Mailed 10/8/12   E. Map          #      Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

*RECEIVED*
*SEP 24 2012*
*ASST. WARDEN OF PROGRAMS*

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log #: _____    E. Map
              (Date)             1209-120-046         (Received By)

7-M

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
| --- | --- | --- |
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 2/05)       Incorporated by Reference in Rule 33-103.006, F.A.C.

G-8

65

**PART B - RESPONSE**

| LING, BRUCE | 450791 | 1209-120-046 | LIBERTY C.I. | C1102S |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal was received, reviewed and evaluated.

Your Formal Grievance addresses multiple issues.  Chapter 33-103.014(1)(a)(m) requires that a formal grievance address only one issue.

Based on the above consider this grievance Returned Without Processing.

CONFIDENTIALITY NOTICE:  This message and any attachments are for the sole use of intended recipient(s) and may contain confidential and privileged information that is exempt from public disclosure.  Any unauthorized review, use, disclosure, or distribution is prohibited.  If you have received this message in error, contact the sender (by phone or reply electronic mail) and then destroy all copies of the original message.

| SIGNATURE AND PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN/ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 10/5/12 DATE |
|---|---|---|

CHIEF HEALTH OFFICER
LIBERTY C.I.

| COPY DISTRIBUTION -INSTITUTION / FACILITY | COPY DISTRIBUTION - CENTRAL OFFICE |
|---|---|
| (2 Copies) Inmate | (1 Copy) Inmate |
| (1 Copy) Inmate's File | (1 Copy) Inmate's File - Inst./Facility |
| (1 Copy) Retained by Official Responding | (1 Copy) C.O. Inmate File |
| | (1 Copy) Retained by Official Responding |

66

G9

Soy-Laden Prison Diet Litigation

Since DOC started serving a diet with a high content of soy-laden protein, several prisoners throughout the Florida penal system have filed suit under 42 U.S.C. §1983 (Civil Rights complaint).   *(Exhaust all of your administrative remedies first AND make sure that your soy protein complaints and side effects are documented at Medical.)*

Statement of facts:

1. Robert Lee Hong ("Plaintiff") is a prisoner with the Florida Department of Corrections ("FDOC") and is housed at Mayo Correctional Institution ("MCI").
2. At all times material herein, Plaintiff was housed at MCI.
3. At all times relevant herein, Defendants were FDOC employees acting under color of state law.
4. Plaintiff sues all Defendants in their official and individual capacities.
5. Initially, on or about May 20, 2009, Plaintiff became aware that something was terribly wrong with his health.
6. Consequently, on May 21, 2009, Plaintiff sought medical attention at MCI through the sick-call process.
7. Specifically, Plaintiff wrote in his sick- call request:
"I'm experiencing digestive problems, for some time now but it's getting worse to the point of the constipation making me strain mightily to defecate, and in turn aggravating my hemorrhoid (quite painfully), and hernia. I believe the digestive problems (and Acne being worse then when I was a teen) are a direct result to the high 'soy' and 'Nutria' diet. I believe Medi-Mucial and a "No-Soy', 'No-Nutria' diet would fix this. This problem has been ongoing for several months now. Recently my financial support has declined; I'm not able to acquire healthy food from the canteen to help keep my digestive system regular anymore--help--.
8. MCI medical staff provided medical care for some of the symptoms, but did not place Plaintiff on any type of special diet nor did they diagnose the catalyst of the symptoms.
9. Plaintiff also corresponded with his mother and described the symptoms he was experiencing. In this same correspondence, Plaintiff asked his mother to do some research on this matter.
10. About a week later, Plaintiff's mother wrote him back and informed Plaintiff that the Illinois Department of Corrections was having a bad problem with their high soy protein diet being served to prisoners, and how this diet was poisoning prisoners.
11. Enclosed with Plaintiff's mother's letter was also a copy of a letter sent to President Obama from the President of the Weston A. Price Foundation, which described the same symptoms Plaintiff was suffering.
12. This information confirmed Plaintiff's speculation that his physical problems were from: A) The soy (toxic amounts of soy isoflavons) or B) The Nutria content (a South American rat family rodent used as a substitute or filler added to real meat or imitation meat products).

Exh. A1-

13. Thus, Plaintiff's first speculation was correct; he was experiencing the symptoms of soy poisoning.

14. Currently, FDOC presides and controls over the Florida prison systems' food service department. Since taking over in September 2009, FDOC began feeding the cheapest meats and patties on the market, which contains a much higher soy protein content than has ever been served to the prison population.

15. Before FDOC operated the food service department, its food vendor Aramark, served food items to the prisoner population with lower soy content in their meats, patties and milk.

16. Defendant Walter A. McNeil ("McNeil") ordered that a new menu be created in order to save money.

17. In the new menu, McNeil included all the new food items that have a high content of soy protein.

18. McNeil knew that a diet high in soy protein would expose many prisoners to serious health problems.

19. However, McNeil still implemented the new menu despite knowing the risk to the health if the prison population.

20. The adverse effects of a high soy protein diet are well document. In fact, in Illinois there is a suit set for trial based on the same allegations set-forth in this complaint. (Harris, et al v. Brown, et al, Case No. 3:07-cv-03225.

21. Upon information and belief, Defendant McNeil created a three member committee to create this new menu.

22. The members were Defendants Charles D Terrell ("Terrell"), Kathleen Fuhrman ("Fuhrman"), and A. Thigpen (Thigpen).

23. Terrell, Fuhrman, and Thigpen created this menu.

24. Terrell, Fuhrman, and Thigpen knew or reasonably should have known that the high level of soy protein in this new menu would expose the Florida prisoner population to serious medical problems.

25. To illustrate, Defendant Terrell, as McNeil's Public Health Nutrition Program Manager.

26. Fuhrman made the menu knowing that the level of soy was high and unhealthy for prisoners.

27. Defendant Terrell, as McNeil's chief of Bureau of Institutional support services approved the master menu.

28. Defendant Thigpen is McNeil's Central Office Food Service Administrator.

29. Plaintiff also notified Defendants of how he was personally harmed by consuming the high soy protein level diet, as explained below.

30. Defendant Thigpen answered Plaintiff's grievance appeal at the central office-Inmate Appeal Department- and basically stated that the responses received at the institutional grievance level were appropriately addressed.

31. In this appeal, reviewed and answered by Defendant Thigpen; Plaintiff pointed out the adverse effects of high levels of soy protein, sufficient facts to support his claim, made Thigpen aware of the pending lawsuit in Illinois, and the health problems Plaintiff was suffering, as a direct result of said diet.

32. Defendant Thigpen still denied Plaintiff's grievance appeal.

2

H2

51. In particular, the sharp pain in Plaintiff's digestive system after eating the soy meals was no longer a problem.

52. Plaintiff was able to defecate without medication, and his acne problem had improved.

53. On December 7, 2009, Plaintiff began exhausting his administrative remedies regarding MCI's medical staff's unreasonable response to the soy protein issue.

54. Plaintiff likewise sent Patrick H. Brown ("Brown"), McNeil's Director of Health Services for the Florida penal system, a copy of the grievance.

55. In this grievance, Plaintiff outlined the problems he was having as a direct result of the soy protein, facts supporting many medical problems associated with high soy-laden protein and Defendant's unreasonable response to the soy protein diet.

56. Defendants McNeil, Terrell, Fuhrman, and Thigpen knew of the problems associated with a diet high in soy-laden protein, yet they failed to respond reasonably.

57. Upon information and belief, Defendants McNeil, Terrell, Fuhrman, and Thigpen knew of the adverse effects of soy-laden protein when the menu was implemented.

58. In fact, a similar lawsuit is pending in this district raising the same claims and/or facts in this case. See, Harris, et al v. McNeil, et al., Case No.: 5:10-CV-76. RS/MD. (Footnote: Plaintiff requests this Court to take judicial notice of the facts and claims in Harris.

59. Plaintiff also sent Howard an Inmate Request requesting that Plaintiff be placed on a vegan diet.

60. Howard denied Plaintiff's request based on an unwritten policy.

61. Howard's response was an unreasonable response to Plaintiff's soy related health problems.

62. On December 9, 2009, Plaintiff's began exhausting his administrative remedies regarding the high soy protein levels in the master menu.

63. But all of Plaintiff's grievances were denied and no reasonable steps have been taken by Defendants McNeil, Terrell, Fuhrman, and Thigpen to correct the health problems Plaintiff has been experiencing related to the high soy protein diet.

64. Before Defendants McNeil, Terrell, Fuhrman, and Thigpen implemented this high soy-laden protein diet. Plaintiff did not suffer from: (A) digestive problems; (B) chronic constipation; (C) hemorrhoids; (D) Inguinal hernia problem (a repair was done in the 80's or 90's); (E) chronic acne problems; (F) sharp pains in Plaintiff's digestive track after eating the high soy-laden items; and (G) excessive intestinal gas from eating the alternate be entrees.

65. These problems were not present in May, 2008, before the implementation of the new soy protein diet.

66. These symptoms started showing and became extremely painful in May, 2009 (for which Plaintiff sought medical care.)

67. These symptoms are consistent with the symptoms associated with soy poisoning.

68. This is illustrated by the fact that Plaintiff's self-initiated no/low soy diet cured most of the aforementioned symptoms to a non-problematic state, with the exception of the painful Inguinal Hernia and newly acquired hemorrhoids.

4

H3

33. Accordingly, McNeil, Terrell, Fuhrman and Thigpen were put on notice that the soy-laden prison diet was affecting Plaintiff and also created a statewide health problem to all prisoners in the Florida penal system, yet Defendants failed to act reasonably.

34. McNeil, Terrell, Fuhrman and Thigpen also knew or reasonably should have known that the right to a nutritionally adequate diet is guaranteed in the U.S Constitution.

35. Defendants McNeil, Terrell, Fuhrman and Thigpen clearly disregarded their obligation to provide nutritionally adequate food that is prepared and served under conditions which do not present danger to health and well-being of prisoners.

36. On December 6, 2009, Plaintiff submitted an Inmate Request to the MCI Food Service Director B. Howard ("Howard") seeking a list of the items served to prisoners at MCI which contain soy protein.

37. Howard responded with the following items: A) Imitation milk; B) dinner stew (imitation meat; Tofu; TVP); C) the BBQ (imitation meat, Tofu, TVP); D)veggie chicken salad ( imitation meat, Tofu, TVP); and E) All turkey meat. [Footnote: TVP stands for Tenderized Vegetable Protein (made from the dehydrated soy plant, and shaped similar to meat nuggets.)]

38. Next, on December 8, 2009, Plaintiff submitted another Inmate Request asking for a list of any other items that had soy content.

39. Howard responded, "The only other menu item that has TVP in it is Tuna Salad."

40. Upon information and belief, Howard should have added the imitation cheese served to prisoners at MCI because it contains soy protein in vegetable form.

41. As a direct result of Defendants McNeil, Terrell, Fuhrman and Thigpen's failure to change the high soy diet, since December 6, 2009, Plaintiff has curtailed his diet to eliminate most, if not, all soy from his diet.

42. Plaintiff has been selectively eating what he can, and at times has gone hungry to eliminate the soy protein from his diet.

43. This selective eating has remained unchanged because Defendants McNeil, Terrell, Fuhrman and Thigpen have failed to provide Plaintiff a soy-laden free diet.

44. For instance, on December 26, 2009, Plaintiff submitted an Inmate Request to Howard requesting to be placed on a non-soy diet.

45. Howard denied Plaintiff's request by stating that Plaintiff could eat alternate trays if he could not eat the main trays.

46. Plaintiff's request for a soy-free diet submitted to Howard was made after Plaintiff eliminated all soy from his diet, as mentioned earlier.

47. The alternate entrée trays provided to Florida prisoners consists of beans 90% of the meals.

48. The alternate bean menu is not sufficient to sustain a nutritionally balanced diet.

49. In addition, the alternate bean diet causes excessive gas and intestinal discomfort that makes it difficult to even sleep due to the need to expel flatulence every few minutes.

50. During the first twenty-days of selectively eating Plaintiff was feeling much better.

3

7 ∧

H4

84. Plaintiff had never been diagnosed before in incarcerated with arthritis, bercitice or cracking joints.

85. However, MCI medical records reflect that Plaintiff is suffering bercitice.

86. The bercitice was in existence nearly a year before Defendants McNeil, Terrell, Fuhrman, and Thigpen initiated the high soy diet, but Plaintiff's bones were not cracking until approximately ten to eleven months ago.

87. It must be noted that the Master Menu created by Defendants McNeil, Terrell, Fuhrman, and Thigpen, contains several foods which have TVP in its pure form, these food items are easily calculated as follows: BBQ Meal ¼ cup = 42 mg. soy isoflavons. Dinner Stew Meal ¾ cup = 42 mg. soy isoflavons. Veggie Chicken Salad Meal ¾ cup = 14 mg. soy isoflavons. Tuna Salad Meal ¾ cup = 14 mg. soy isoflavons.

88. Other food items are either laced with soy, mixed with soy TVP (patties, hotdogs, sausage, etc ..) or processed meat mixture with TVP. soy additive.

89. Upon information and belief, an example of a typical daily ration- such as Thursday on week two of the menu- prisoners are provided the following in the food source: (A) Glass of powdered imitation soy-laced milk 8 oz. = 20 mg. (B) Breakfast Meat Gravy 6 oz. = 10 mg. (C) Lunch, Turkey Hot Dogs 2- quantity = 30 mg. (D) Dinner Stew 6 oz. = 42 mg.   Total Toxic Amount: 102 mg. for this one day.

90. After consuming 38 milligrams or more symptoms of soy poisoning begin to manifest.

91. The deliberate indifference and reckless disregard of Defendants McNeil, Terrell, Fuhrman, and Thigpen has caused Plaintiff to suffer: (A) sharp pains in digestive system; (B) chronic and severe constipation, alternating with debilitating diarrhea; (C) chronic acne; (D) hemorrhoids (caused by the constipation); (E) ruptures inguinal hernia (caused by the constipation); (F) signs of vitamin D and calcium deficiencies (joints cracking); and (G) excessive gas from eating the alternate bean entrees.

92. Moreover, as a proximate result of the deliberate indifference and reckless disregard of Defendants McNeil, Terrell, Fuhrman, and Thigpen; Plaintiff is currently suffering from: (A) ruptured Inguinal hernia (caused by the constipation); (B) hemorrhoids (caused by the constipation); (C) signs of vitamin and calcium deficiencies (joints cracking); and (D) un extreme amount of human gas, caused by the alternative bean meals eaten to avoid the soy-laden protein meats.

93. Plaintiff has exhausted his administrative remedies and files this suit.

Statement of Claims:    Claim One (Against Defendants McNeil, Terrell, Fuhrman, and Thigpen)

94. Defendants McNeil, Terrell, Fuhrman, and Thigpen while acting under color of State law, violated Plaintiff's Eighth Amendment rights.

95. Defendants McNeil, Terrell, Fuhrman, and Thigpen knew, or reasonably should have known, that Plaintiff has a constitutional right to a nutritionally adequate diet.

6

H5.

96. Defendants clearly disregarded their obligation to provide nutritionally adequate food that is prepared and served under conditions which do not present danger to Plaintiff's health and well-being.

97. Defendants also knew or reasonably should have known that the high levels of soy-laden protein would cause Plaintiff to suffer soy poisoning and create a risk to his health and well-being.

98. Defendants' deliberate indifference and reckless disregard for Plaintiff's constitutional rights has caused the adverse effects mentioned in the statement of facts to Plaintiff's health and all the medical problems resulting from the high levels of soy-laden protein Plaintiff is being served.

99. Defendants McNeil, Terrell, Fuhrman, and Thigpen were notified of the adverse effects this diet was having on Plaintiff, yet failed to respond reasonably.

100. Defendants failed to change Plaintiff's diet, provide a soy-free or lower soy diet, failed to take any corrective remedy to the known risk to Plaintiff's health.

101. The soy-laden and poisonous diet not only affects Plaintiff, it is adverse to the health of every prisoner incarcerated in the Florida Department of Corrections, and will cause many illnesses if continued, which in turn will likely result in many future lawsuits by prisoners.

102. Defendants McNeil, Terrell, Fuhrman, and Thigpen acted with evil motive and malicious intent, as well as deliberate indifference, callous indifference and reckless disregard for Plaintiff's constitutional rights.

There are other cases besides the ones listed above…*Ruiz v. McNeil and Floyd v. McNeal.* If you are a prisoner and have been affected by the high soy-laden protein prison diet, please submit your affidavits, under oath, to the address shown below and include RE: *Hong v McNeil, Case Number 4:10-CV-155-SPM/WCS.*

To: Honorable Williams C. Sherrill, Jr.
    United States District Court
    Northern District of Florida
    111 N. Adams St.
    Tallahassee, FL 32301


Remember every prisoner will benefit from the removal of these foods. According to FDOC Annual Report for Fiscal Year 2008-2009, the Department spends less that $3.00 per day per prisoner, or about one dollar per meal to feed prisoners.

7



**CAPITAL REGIONAL MEDICAL CENTER**

Capital Regional Medical Center
2626 Capital Medical Blvd
Tallahassee, FL 32308
(850) 325-5000

# Discharge Summary (Patient Copy)

Date:    05/15/2017
Time:    9:05 p.m.

Treating Provider:    Shiva Lakshmin, MD      Phone:      Fax:

Patient Name:    **BRUCE LING**

Patient Address:    2236 DAVID SIBBIE LANE
TALLAHASSEE , FL 32317

MR#:    K000175904
Phone:    (850)597-3078    Account:    K01017315211

| Your Discharge Instructions: | Your Medication Education: | Your Prescriptions: |
|---|---|---|
| ELASTIC BANDAGE<br>KNEE CARTILAGE INJURY<br>NARCOTIC MEDICATION<br>.Work Excuse<br>INTERNAL DERANGEMENT<br>OF THE KNEE<br>MUSCLE SPASMS<br>WORK RELEASE FORM<br><br>BACK PAIN & INJURY | Cyclobenzaprine<br>Hydrocodone and<br>Acetaminophen | Flexeril 10 Milligram # 15 Tablets<br>1 TABLET EVERY 8 HOURS<br>AS NEEDED FOR MUSCLE<br>SPASMS/PAIN . ... (0<br>Refills).Printed.<br>Norco (Lortab) 5-325 Milligram #<br>15 Tablets<br>1 TABLET EVERY 4 TO 6<br>HOURS AS NEEDED (0<br>Refills).Printed. |

You should follow up with the following physician in 2 days:

Physician Name:    MAIN PHONE NUMBER Tallahassee Orthope

Address:    3334 Capital Medical Boulevard
Tallahassee , FL 32308

Specialty:    Orthopedic Surgery
Phone:    (850) 877-8174

Follow-up Notes:    On 05/15/2017 this patient was treated at Capital Regional Medical Center
for Refer to Discharge Instruction List.


*PINS*

Summary Content

H7

## Superbill: Ling, Bruce

**Ticket #:** 002842355
**DOS:** 4/14/2016
**Visit Reason:** FRACTURE
**Memo:** FX- L ACHILLES INJ WORKING OUT / X-RAY TMH 4-13-16 SELF PAY 350.00 WILL BRING 20 .00 AT CKIN TO

## Tallahassee Orthopedic Clinic

**Physician:** Joel Ledford, PA-C
**Seen By:**
**Referring Physician:**

| | | |
|---|---|---|
| **Ling, Bruce** | **DOB:** 5/14/1976 | **Insurance 1:** Self Pay-Uninsured |
| 2236 Davud And Sibbie Lane | **PM Acct. #:** 0342271 | **Insurance 2:** |
| Tallahassee, FL, 32311-0000 | **E-Record #:** 0342271 | **WC Insurance:** |

---

**E/M:** 99203- (Office/outpatient Visit New Detailed)

**Exam:** Tendon Rupture 727.69 (Nontraumatic) (Onset: )

- 727.68, Nontraumatic rupture of other tendons of foot and ankle
- M66.872, Spontaneous rupture of other tendons, left ankle and foot
- L4360-, 1, (Pneumatic Walking Boot)

---

**Treatment Plan:**

**Orders And Instructions:**
- Copies to Primary Care
- Seen for Dr. Borom
- Recheck - 6 weeks
- DME Proof of Delivery

---

**Medications**
- hydrochlorothiazide 12.5 mg capsule, **Prescriber:**

---

**Allergies**

75

H8

## REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☒ Warden ☐ Assistant Warden ☐ Secretary, Florida Department of Corrections

From: __Ling       Bruce      A__    __450791__    __Liberty Correctional Inst.__
       Last   First   Middle Initial      Number              Institution

### Part A – Inmate Grievance

To whom this may concern,

I write this medical grievance out of great concern for my current health. This new administration may not be familiar with the constant problems I have been having with Liberty C.I.'s medical staff. I felt compelled to write the instant grievance to notify you of my plight being that you have control of the care, custody and control of inmates. Over nearly two years, I have submitted several sickcalls concerning the same health issues/condition, I experience. Within nearly the last two months I have submitted two sickcalls, and request, but have yet to be called to medical for the three scheduled sick calls. I'm under the impression that the acts of the medical staff are deliberate and that they are still being indifferent to my serious medical needs, amounting to cruel and unusual punishment.

Could you please find out why the medical departments staff is constantly neglecting my serious medical needs, to where I'm still suffering from brain, heart, breathing, neurological, muscuskeletol problems and more? See Sickcalls.

If it had not been for my self regulated physical activities, I probably would have been dead. How much longer will I be allowed to suffer? See attachment A.

__July 20, 2013__                          __Bruce A. Ling  450791__
       DATE                          SIGNATURE OF GRIEVANT AND D.C. #

---

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _____ / _____

Mailed 8/6/13    J. McCuller                              #          Signature

#### INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

#### Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on:_____    Institutional Mailing Log #:_____

                     (Date)                                                    (Received By)

070    **RECEIVED**              # 1307-120-065          M. Hathaway
       JUL 22 2013

DISTRIBUTION:    INSTITUTION/FACILITY          CENTRAL OFFICE
**OFFICE OF THE WARDEN** (2 copies)           INMATE
                INMATE'S FILE                  INMATE'S FILE - INSTITUTION./FACILITY          ExhI1-6
**LIBERTY C.I.** INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                               CENTRAL OFFICE GRIEVANCE FILE
DC1-303 (Effective 2/05)          Incorporated by Reference in Rule 33-103.006, F.A.C.

76

**PART P - RESPONSE**

| LING, BRUCE | 450791 | 1307-120-065 | LIBERTY C.I. | B1114U |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal was received, reviewed and evaluated.

On 7/10/13, you were received back at Liberty C.I. from RMC. You were seen by the clinician on 7/23/13 and also seen in sick call on 7/27/13. Your medical issues are being addressed.

Based on the above information, consider this grievance Denied.

If you are not satisfied with the response you received at the institutional level you may obtain further Administrative Review for your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by F.A.C. Chapter 33-103.007(3)(a) and (b), and forwarding to the Florida Department of Corrections 501 South Calhoun Street Tallahassee, FL 32399.

CONFIDENTIALITY NOTICE: This message and any attachments are for the sole use of intended recipient(s) and may contain confidential and privileged information that is exempt from public disclosure. Any unauthorized review, use, disclosure, or distribution is prohibited. If you have received this message in error, contact the sender (by phone or reply electronic mail) and then destroy all copies of the original message.

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 8/5/13 DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

I2

# INMATE REQUEST

**STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS**

Mail Number: _____
Team Number: 40
Institution: (RMC) West

| TO:<br>(Check One) | ☐ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | ☒ Medical<br>☐ Mental Health | ☐ Dental<br>☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name<br>Bruce Ling | DC Number<br>450791 | Quarters<br>E2-14L | Job Assignment<br>N/A | Date<br>6-22-13 |
|---|---|---|---|---|---|

## REQUEST
Check here if this is an informal grievance ☐

On 6-1-13, while at Liberty C.I., I had submitted a sick call. I was
scheduled for a 6-14-13 call-out but was not called for the call. Since
the medical department normally does if schedule 9:00AM and afternoon 1s.
I submitted a request asking to be rescheduled before I transit to
(RMC). The medical department scheduled me another sick call call out
for 6-19-13 at 10:30 AM, on the same day of my early transfer to (RMC).

I never made it to my second call out either because on by it here
I had made reason before the deadline to notify medical for my diff-
erent health conditions, in addition to one medical for my mental
health, with the need of my medication to be sent along so I would
althrough not have it which I at the Liberty C.I. medical department to
get the powder and cream at PM. I now request for placement and will run.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All
informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE

DATE RECEIVED: _____

You have no appt. scheduled, you may
access sickcall at your Discretion, Please
Submit a Sick Call Request

D.N. WAINWRIGHT
SR LPN
CONTRACT PERSONNEL

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied,

you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: 7/5/13 |
|---|---|

RECEIVED
JUL 2 7 2013
RMC-West

I 3

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.

2 Copies

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☒ Warden  ☐ Assistant Warden  ☐ Secretary, Florida Department of Corrections

From: Ling Bruce A.    450791    Liberty Correctional Inst.
     Last   First   Middle Initial     Number      Institution

---

**Part A -- Inmate Grievance**

This is a medical grievance: Today I was seen by a nurse (M.Ivester) at sick call, with Nurse Register present. She initially said that she did not have my sickcall form on hand, so I provided her with my pink copies. Upon me explaining my medical problems, the nurse checked my vital signs and stated that I was a little dehydrated. The nurse told me that I cannot get a low bunk pass unless I have medal rods, pins or such things of the nature. I explained to nurse that because of my illnesses, I now have a "health condition" to where I have arthritis in my spine, knees, fingers, elbows and so forth, with muscle pains which makes it difficult for me to climb in and out of my bunk, and to lift my heavy locker. For some reason the nurse said that I couldn't look at her with eye contact, and that I had smiled. She then abruptly told me to leave medical. I then inquired about receiving anti-fungal cream and powder for my feet and groin area being that my "sweating" disorder contributes to the problems. The nurse then mocked me, and told me to leave. I then asked her would I be seeing the Doctor next, or what? Because after all I did submit a sickcall for treatment and that purpose. The nurse again told me to leave without responding to my question, as I walked out the door. Out of all of the inmates who were seen that morning, I was the only one who was discriminated upon, and the last to be seen. I have family members, friends, and medical/mental health records to verify my perspiration disorder. Also lab test, results, medical specialist consults, the internet, and medical books in Liberty C.I.'s library would confirm the illness, injury and symptoms that I have repeatedly complained of, and requested for treatment or a remedy. Perhaps the nurse did see a "faint smile" of amusement because of the constant dismissal, and antic behavior of the nurse and staff. And the non-eye contact is because its difficult for me to look at people in the eye who does not have my best interest of my health. After all, it is because of the medical departments negligence, and deliberate indifference which has contributed to my health problems and the deterioration. Ultimately this issue is going to have to be dealt with, whether months or years from now, if I have that long to live. I now request to receive equal treatment and adequate medical care and treatment for sick call.

July 27, 2013
DATE

Bruce A. Ling
SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ / _____
             #       Signature

### INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative feels that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level.

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____ (Date)

Institutional Mailing Log #: _____

(Received By)

07H    JUL 29 2013    # 1307-120-096    M. Hattaway

DISTRIBUTION:    INSTITUTION/FACILITY      CENTRAL OFFICE
         INMATE (2 Copies)        INMATE
         INMATE'S FILE            INMATE'S FILE - INSTITUTION/FACILITY
         INSTITUTIONAL GRIEVANCE FILE    CENTRAL OFFICE INMATE FILE
                              CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 2/05)      Incorporated by Reference in Rule 33-103.006, F.A.C.

I-4

**PART B - RESPONSE**

| LING, BRUCE | 450791 | 1307-120-096 | LIBERTY C.I. | B1114U |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal was received, reviewed and evaluated.

On 7/27/2013, you were not seen by Nurse Ivester. Chapter 33 requires formal grievances address only one issue. Formal Grievance 1307-120-065 was denied regarding Medical staff neglecting your medical needs.

Consider this formal grievance Denied.

If you are not satisfied with the response you received at the Institutional level you may obtain further Administrative Review for your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by F.A.C. Chapter 33-103.007(3)(a) and (b), and forwarding to the Florida Department of Corrections 501 South Calhoun Street Tallahassee, FL 32399.

CONFIDENTIALITY NOTICE: This message and any attachments are for the sole use of intended recipient(s) and may contain confidential and privileged information that is exempt from public disclosure. Any unauthorized review, use, disclosure, or distribution is prohibited. If you have received this message in error, contact the sender (by phone or reply electronic mail) and then destroy all copies of the original message.

WU RUMMEL, M.D.
REGIONAL HEALTH SERVICES
MEDICAL EXECUTIVE DIRECTOR

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 8/15/13 DATE |
|---|---|---|

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding

Exh I-5

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

Mail Number: _____
Team Number: I
Institution: Quincy Annex

| TO:<br>(Check One) | ☐ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | ☑ Medical<br>☐ Mental Health | ☐ Dental<br>☐ Other Nurse |
|---|---|---|---|---|

| FROM: | Inmate Name Bruce Ling | DC Number 450791 | Quarters A1-21up | Job Assignment Outside1 | Date 11-13-11 |
|---|---|---|---|---|---|

**REQUEST** To see Nurse                    Check here if this is an informal grievance ☐

On 11-11-11, There was this strange incident that occurred
with my health. I felt light headed, as I might pass out. It
was difficult to breath. My heart felt as if it were fluttering.
I felt weak but no real pain, much fatigue. The left side
of my jaw appeared to clench close, but it was like I had
to force it from closing, and to take deep breaths to breathe
and not pass out. Today is Sunday, near 9:00 PM, and I'am still
having these feelings. The first night the problems began, I was
afraid to go to sleep, so I wrote a letter to my childrens mother
I also spoke with the dorm Sgt. and Ofr. Davis about my problems
just in case something had happend to me. They asked if I wanted
to declare a medical emergency, but I wasn't sure. My kidneys/Blood pressure?

All requests will be handled in one of the following ways:  1) Written Information or   2) Personal Interview. All
informal grievances will be responded to in writing.

**RECEIVED**

------------- **DO NOT WRITE BELOW THIS LINE** -------------

**RESPONSE**                                    DATE RECEIVED:   NOV 16 2011

MEDICAL DEPARTMENT
LIBERTY CORRECTIONAL INST.

On 11/14/11 you were transferred from Quincy Annex to the
Main unit for care. You are being seen by the Clinician.

[The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied,

you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: 11/16/11 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as

I-6



## Bond Community Health Center, Inc.

April 13, 2016                                    Sent by Standard and Certified Mail

Mr. Bruce Ling
2236 David and Sibbie Lane
Tall. Fl. 32317

Dear Mr. Ling

On many attempts we have tried to accommodate your medical needs, but we find out that there is not appropriate provider-patient relationship. We will treat emergencies only for the next 30 days and we recommend that you begin to seek a new health provider immediately. We will forward your medical records to the physician of your choice at no cost.

Damon McMillan, MD
Medical Director

Temple O. Robinson, MD
Chief Executive Officer

✱ June 29, 2016, Wednesday.
Bruce Ling came in today. But
was unable to be seen.

Maricaloyne
Site Admin                                    EXH J1

 **Bond Community Health Center, Inc.**

1720 S. Gadsden St., Tallahassee, Fl 32301

## Patient Complaint Form
### CONFIDENTIAL

**Patient Information:**
Patient Name: Bruce Ling
DOB: 5-14-76
Current Address: 2236 David and Sibbie Ln.
Tall, FL 32317

SSN: 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
MRN#: _____
Phone: (850)597-3078
Email: lingdynasty@yahoo.com

Date of incident: 3-10-16    Location: Bond    Time: noon
Reporting provider/staff member: _____

**Name of Complainant** (if different from above):
- ☐ Staff member _____ Phone: _____
- ☐ Family member _____ Phone: _____

**Nature of Complaint** (check one):

- ☐ Question diagnosis/ treatment
- ☐ Request Second Opinion
- ☐ Physician Attitude
- ☐ Physician Call-Back
- ☐ Specialty Referral
- ☐ Nurse Call-Back
- ☐ Lab Results
- ☐ Same Day Care
- ☐ Telephone Assessment/ Disposition
- ☐ Confidentiality
- ☐ Radiology
- ☐ Pharmacy

- ☐ Administration
- ☐ Telephone System
- ☐ Adequacy of clinic hours
- ☐ Access to physical exam
- ☐ Access to routine appointments
- ☐ Exam/ Waiting room delay
- ☐ Staff Attitude
- ☐ Billing/ Charges
- ☐ Procedure inconvenient/ confusing
- ☐ Medical Records
- ☐ Dental Services
- ☐ Behavioral Health
- ☑ Other

**Disposition/ Referral:**
1. File Only
2. Chief Administrative Officer
3. Treating Provider
4. Chief Compliance Off./ Risk Mgr.
5. Dept. Manager
6. Chief Medical Officer

**Details of Complaint** (Please attach additional paper if needed)

In question is the necessity of Doctor Campbell to give patient Ling an anal prostate exam in order to determine if Ling should receive his (BPH) medication again. Ling feel as if he was sexually assaulted by Dr. Campbell when he exerted force when pushing his finger up Ling's rectum. It appeared to Ling that Dr. Campbell committed an act of malice. Ling had spoken with a Ms. Hall about the incident and she stated that Mr. Gabriel Otuonye would call me but he never did or returned my calls.

J2

 **Bond Community Health Center, Inc.**

April 19, 2016                                    Sent by Standard and Certified Mail

Mr. Bruce Ling
2236 David and Sibbie Lane
Tall. Fl. 32317

Dear Mr. Ling

This is in follow up to the telephone conversation held with you on yesterday, April 18, 2016. We have received your patient complaint form and will conduct a thorough investigation of this issue. The result of our investigation will be communicated to you, when completed.

Please note that the letter you may have received regarding the termination of your services at Bond is in no way related to the complaint form you recently submitted.

As a patient, you have a right to request an explanation or file a complaint regarding services rendered to you.

Damon McMillan, MD
Medical Director

Gabriel Otuonye, LHRM
Compliance Officer/Risk Manager

J3

 **Bond Community Health Center, Inc.**

June 8, 2016                                    Sent by Standard and Certified Mail

Mr. Bruce Ling
2236 David and Sibbie Lane
Tall. Fl. 32317

Dear Mr. Ling,

This is a follow-up to a letter we sent to you April19, 2016 regarding your patient complaint. After a comprehensive investigation and a review of your complaint, we have determined the following:

1.  Based on your primary acute complaint and other assessments performed previously, the appointment for this physical exam  was scheduled with Dr. Campbell

2.  In the opinion and judgement of Dr. Campbell, the digital rectal exam (DRE) performed was necessary due to your complaint of urogenital concerns. This physical examination is the standard of care for such complaints and is evidence based.
3.  The test performed, is known to be uncomfortable, and no malicious intent was found on the part of the provider.

In view of the forgoing findings, we will close Bond's investigation file on this matter. If you have further concerns, please contact the undersigned. Bond's employees have been instructed to direct all correspondence and concerns to the undersigned.

Temple Robinson, MD
Chief Executive Officer

Damon McMillan, MD                          Gabriel Otuonye, MHA, LHRM, CMCO
Chief Medical Director                        Compliance Officer/Risk Manager

J4

**Bond Community Health Center, Inc.**

1720 S. Gadsden St., Tallahassee, Fl 32301

## Patient Complaint Form
### CONFIDENTIAL

**Patient Information:**

Patient Name: Bruce Ling                                      SSN: 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

DOB: 5-14-76                                                  MRN#: _____

Current Address: 22.36 David and Sibbie Ln                   Phone: _____

Tall, FL 32317                                                Email: _____

Date of incident: 6-29-16      Location: specialty    Time: 10:45 - 12:00 pm

Reporting provider/staff member: _____

## Name of Complainant (if different from above):

☐ Staff member _____ Phone: _____

☐ Family member _____ Phone: _____

## Nature of Complaint (check one):

| | |
|---|---|
| ☐ Question diagnosis/ treatment | ☐ Administration |
| ☐ Request Second Opinion | ☐ Telephone System |
| ☐ Physician Attitude | ☐ Adequacy of clinic hours |
| ☐ Physician Call-Back | ☐ Access to physical exam |
| ☐ Specialty Referral | ☑ Access to routine appointments |
| ☐ Nurse Call-Back | ☐ Exam/ Waiting room delay |
| ☐ Lab Results | ☐ Staff Attitude |
| ☐ Same Day Care | ☐ Billing/ Charges |
| ☐ Telephone Assessment/ Disposition | ☑ Procedure inconvenient/ confusing |
| ☐ Confidentiality | ☐ Medical Records |
| ☐ Radiology | ☐ Dental Services |
| ☐ Pharmacy | ☐ Behavioral Health |
| | ☐ Other |

## Disposition/ Referral:

1. File Only            3. Treating Provider       5. Dept. Manager

2. Chief Administrative Officer   (4. Compliance/ Risk Management)   6. Chief Medical Officer

## Details of Complaint (Please attach additional paper if needed)

I Bruce Ling had an appointment at the specialty clinic to see Doctor Kelly Miller but was later advised that I could not be seen because Bond had discharged me. I asked why I had been discharged and they showed me a letter from Bond that I had once received with vague statements. The reason I came to my appointment is because I received a call from a Bond employee confirming it for 6-29-16

86

Patient or Compla



**NEIGHBORHOOD MEDICAL CENTER**

NEIGHBORHOOD MEDICAL CENTER is committed to respecting your right to privacy of your personal health information and in providing quality healthcare. We take all complaints very seriously, and will not retaliate for filing a complaint. To file a complaint, complete this form and return it to the Executive Director.

**COMPLAINT SUBMITTED**: ☒ In Person   ☐ Via Mail   ☒ Via Phone

**COMPLAINT SUBMITTED BY**: ☒ Patient   ☐ Other

PATIENT NAME: _Bruce Ling_   DATE OF INCIDENT: _2016-2017_

ADDRESS: _2236 David and Sibbie Ln_

CITY: _Tall_   STATE: _FL_   ZIP CODE: _32317_

TELEPHONE NUMBER: _850-597-3078_

**NATURE OF COMPLAINT:**

☐ HIPAA Violation   ☒ Quality of Care   ☐ Billing   ☐ Customer Service

**COMPLAINT INVOLVES:**

☐ Front Desk   ☒ Clinic Staff   ☒ Provider   ☐ Mental Health   ☐ Social Services

☒ Administration

Description of Complaint:

Upon Complainant Ling visiting the Neighbor Hood Medical Center in search of a diagnosis treatment and care for his debilitating medical and mental condition, he has had none of the above seriously considered by the medical staff. It has been explained to the medical staff that complainant Lings myriad of symptoms and medical condition began after he took an Influenza vaccine while in prison, and no medical staff has attempted to test for exclusion of an Influenza vaccine injury. Nor has complaintant Ling received treatment or care for his prostate/urological problems. The CEO is aware of aforementioned

SIGNATURE: _Bruce A. Ling_   DATE: _1-25-17_

☐ Additional Documents Attached

438 W. Brevard St.
Tallahassee, Florida 32301
850.224.2469 (Phone) 850.224.1139 (Fax)

K1



# NEIGHBORHOOD MEDICAL CENTER

NEIGHBORHOOD MEDICAL CENTER is committed to respecting your right to privacy of your personal health information and in providing quality healthcare. We take all complaints very seriously, and will not retaliate for filing a complaint. To file a complaint, complete this form and return it to the Executive Director.

**COMPLAINT SUBMITTED:** ☑ In Person  ☐ Via Mail  ☐ Via Phone

**COMPLAINT SUBMITTED BY:** ☐ Patient  ☐ Other

PATIENT NAME: _Bruce A Ling_  DATE OF INCIDENT: _3-20-17_

ADDRESS: _2236 David and Sibbie Ln._

CITY: _Tall_  STATE: _FL_  ZIP CODE: _32317_

TELEPHONE NUMBER: _(850) 597-3078_

## NATURE OF COMPLAINT:

☐ HIPAA Violation  ☒ Quality of Care  ☐ Billing  ☐ Customer Service

## COMPLAINT INVOLVES:

☐ Front Desk  ☒ Clinic Staff  ☐ Provider  ☐ Mental Health  ☐ Social Services

☒ Administration

Description of Complaint: _This is patient Ling's second time waiting 3 to 4 hours to be seen by Dr. Lee. Patient Ling has been enrolled at the Lewis-Richardson location for about 6 months without treatment and care for his prostate condition and the myriad of symptoms he has been complaining of since being enrolled at this facility, namely his 2011 vaccine injury, and soy poisoning while in prison._

SIGNATURE: _Bruce Ling_  DATE: _3-21-17_

☐ Additional Documents Attached

KI-2

In addition patient Ling now reports the inappropriate touching of the leg and knee of Dr. Lee against patient Ling while showing patient Ling images of enlarged prostates and when physically demonstrating ejaculation of the penis. This occurred twice.

This type of inappropriate touching had patient Ling enraged. Moreso because of the ill experiences that he has had with Afro-American male Doctors.

The only reason that patient Ling had not reported the first instance of waiting on Dr. Lee for many hours and the inappropriate touching was because the CEO Jeanne S. Freeman had ensured him that Dr. Lee would be there to help his situation of medical conditions.

I also note that Dr. Lee inappropriately ran his fingers around patient Lings head in another one of his cover-up demonstrations.

Patient doesn't know if Dr. Lee was aware of a recording device.

K2

# Affidavit

This letter/affidavit hereby comes to the attention of The United States Court OF Federal Claims, Office OF The Special Master Christian Moran by witness/affiant __Marcia Thomas__, DL #T520541-77-9449 written by Bruce Ling.

I Marcia Thomas has been in a relationship with Plaintiff Bruce Ling for the past two plus years and has been his sole care giver for the entire time, since learning of his condition of a influenza vaccine injury.

Bruce is always sick in the mornings, with upset stomach, nausea, gas cramps, usually forcing bowel movements with a strong odd smell.

He wakes up with body aches, pains and stiffness in which I would have to massage him from his head to his feet literally in order to ease the aches and pains. Bruce often makes request for me to help releive him as well to make him feel better. His prostate issue just worsens his vaccine injury condition

Bruce complains alot about how tired and weak he is and we often have arguments because he thinks that I dont believe him but it's just difficult for me to understand how he got this way, physically and mentally.

L1

Bruce has been seeking medical help for years and still don't have a diagnosis. He complains about heart, breathing and brain problems as well.

I've tried to support Bruce throughout his battle with his condition and the Courts but he is getting worser by the day, with violent and suicidal thoughts, because he is not getting the medical and mental help that he needs.

I can no longer help to support Bruce finantially. The electricity had been turned off once recently and a time before. He is getting eviction notices on the regular because Bruce is unable to work in order to support himself or to pay child support being that his physical and mental deteriorating condition caused by the influenza vaccine wont allow it.

I'am afraid that something terrible may happen if Bruce Ling doesn't get the proper diagnosis care and treatment for his vaccine injury, treatment is very much needed. I've done all that I can to help Bruce but I'am caring for (5) five Kids including my self.

I Marcine Thomas declare that to the best of my Knowledge and belief, the information herein is true and correct, and nothing has been promised.

17.

This letter / affidavit herby comes to the attention of the united states Court of federal Claims office of the special Master Christian Moran by witness / Affiant Damien C. Ling.

I Damien C. Ling am the youngest brother of Bruce. & Ling. In November of 2011, I learned of his horrible health condition that began after taking an influenza vaccine shot.

I was deeply concerned of my brothers situation while he was in the florida Department of Correction. During his incarceration I was unable to visit nor was I able to communicate with him telephonicly.

When I returned home on 2-25-17, I immediatly noticed a change in my brothers health, when I looked upon him and gave him a handshake and hug.

Although I hadn't seen my brother in quite some time, and understanding he had indeed become older, It was at

L3

I remember him being a strong and calm individual who was always able to get up and move about. Now he's sluggish and faint in all his movements. He always seems weak. I do my best to encourage him.

I Damien C. Ling declare that to the best of my knowledge and belief the information herin is true and correct and nothing has been promised to me.

Date: 2-27-17

Damien C. Ling

L4

3-28-17

This letter hereby comes to the attention of the United States Court of Federal claims office of the Special Master Christian Moran by witness Antonio Ling. I, Antonio remember my brother Bruce being of good sound health able to exercise with me besides his frequent use of the restroom (to urinate). We both were incarcerated at the Wakulla Main Unit Inst. during this period, up until he was transferred to another facility. But round or about a year later I was still at the same facility where a distant relative / friend by the name of Charles Bosby told me that he (Mr. Bosby) and my brother (Bruce) were at a facility somewhere in Gadsen County, Quincy work Camp, I believe where my brother was then transferred to Liberty Corrections because he had become ill. I was told by Mr. Bosby, that the condition was serious (something about sweating real bad). A year or so later I met Mr. Bosby at another facility and he again relayed the same information to me. And now i know that my brothers' condition has caused him health issues. I Antonio Ling do declare that to the best of my knowledge + belief that the information herein is true and correct and nothing has been promised me by Bruce Ling.

/s/ Antonio M. Ling
/s/ Antonio M. Ling #28557
Jefferson Correctional Inst. YZ 1064
1050 Big Joe Rd.
Monticello, Florida 32344

L5

## IN THE COUNTY COURT, SECOND JUDICIAL CIRCUIT
## IN AND FOR LEON COUNTY, FLORIDA

BRUCE LING.

     Plaintiff.

                                     CASE NO.: 2016- SC-001718

v.

BOND COMMUNITY HEALTH CENTER.
TEMPLE ROBINSON, M.D., KENDALL
CAMPBELL. M.D., DAMON McMILLAN,
M.D., and GABRIEL OTUONYE. MHA.

     Defendant.

## ORDER

It is hereby Ordered and adjudged that Defendants. Bond Community Health Center.

Temple Robinson. M.D., Damon McMillan. M.D. and Gabriel Otuonye. MHA's. Motion To

Dismiss Plaintiff's Amended Statement of Claim is hereby **GRANTED** with prejudice.

Done in Chambers, Tallahassee. Leon County. Florida this 31st day of May. 2017.

                                           Stephen S. Everett
                                           Stephen Everett
                                           County Judge

cc:     Rogelio J. Fontela. Esq.
         Bruce Ling

M1

In The County Court, Second Judicial Circuit
In And For Leon County, Florida

Bruce Ling,
     Plaintiff.

V.

Bond Community Health Center,
Temple Robinson, M.D., FSU Board
Of Trustees, ET, AL., Kendall
Campbell, M.D., Damon McMillan,
M.D., and Gabriel Otuonye, MHA,
     Defendants.

Case No.: 2016-SC-001718

<u>Motion For Leave To Amend Claim
To 42 U.S.C 1983 Federal Civil Complaint</u>

Plaintiff Bruce Ling, pursuant to Florida Rule Of Civ, Procedure Rule, re_____ requests leave to file an amended claim to a 42. U.S.C 1983 Federal Civil Complaint

1. The plaintiff originally filed a claim of patient/medical abandonment in the small claim court of Florida

2. Upon the claim being dismissed with prejudice when the plaintiff did not amend his complaint to be in compliance of F.S. Chp 766., plaintiff had the intents to amend the claim to his pre drafted 42 U.S.C 1983 Federal civil complaint, had he not been successful in the small claims court, as a strategy, but was know to defense counsel. (Plaintiff Ling is trying to avoid his other

FILED

M2

3. At the 5-25-17 court hearing the plaintiff did not have ample oppurtunity to reconsider voluntarily dismissing his claim of patient abandonment before it was promptly dismissed with prejudice by the court upon plaintiffs arguement.

4. Plaintiff Ling is under the impression that the filing of his claim of Patient/medical abandonment was filed in a court without jurisdiction

5. And he now request that the court set aside, cancel or Revoke his ruling of dismissal with prejudice, and to make a new ruling of dismissal with out prejudice, allowing the plaintiff to refile his claim of patient/ medical abandonment in the United States District Court, of proper jurisdiction.

This court could grant leave freely to amend a claim/complaint.

Date 5-25-17

Respectfully Submitted,
Bruce A Ling

M3

IN THE COUNTY COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY FLORIDA

BRUCE LING,
        Plaintiff.

                                   **CASE NO: 2016 CC 1718**
                                   **DIVISION 4: EVERETT**

v.

BOND COMMUNITY HEALTH CENTER,
TEMPLE ROBINSON,
DAMON MCMILLAN,
GABRIEL OTUONYE
        Defendant (s).

## ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND CLAIM TO 42 U.S.C. 1983 FEDERAL CIVIL COMPLAINT

THIS CAUSE, having come before the Court on the Plaintiff's Motion For Leave to Amend Claim To 42 U.S.C. 1983 Federal Civil Complaint, and the Court, having reviewed the motion, and being otherwise fully informed of the premises, it is hereby

ORDERED and ADJUDGED that:

The Motion is **DENIED**.

*Stephen S. Everett*

**HONORABLE STEPHEN S. EVERETT**
**County Judge**

Copies furnished to:

Rogelio Fontela
1720 N. Gadsden Street
Tallahassee, FL 32301

Bruce Ling
2236 David and Sibble Lane
Tallahassee, FL 32311

M4

Bruce Ling
2236 David and Sibbie Ln.
Tall, FL 32317

UNITED STATES POSTAL SERVICE.

Retail

P

US POSTAGE PAID
**$7.60**

Origin: 32301
Destination: 32502
1 Lb 2.80 Oz
Jun 08, 17
1188920680-11

1006

PRIORITY MAIL ®2-Day

Expected Delivery Day: 06/10/2017

C009

USPS TRACKING NUMBER

9505 5117 6624 7159 0862 78

Clerk
United States District Court For Northern
100 N. Palafax ST
Pensacola, FL 32502